Ex parte ENG.
No. 27735.

District Court, N. D. California, S. D.
March 16, 1948.

Walter E. Hettman and Chan Chun Wing, both of San Francisco, Cal., for petitioner.

Frank J. Hennessy U. S. Atty., and Edgar R. Bonsall, Asst. U. S. Atty., of San Francisco, Cal., for respondent.

GOODMAN, District Judge.

Petitioner seeks a writ of habeas corpus, to avoid deportation to China pursuant to an order of the Attorney General of the United States. The cause is under submission to this Court upon the petition for the writ, the respondent's (Commissioner of Immigration) return to the order to show cause,—to which is appended the petitioner's immigration record,—and the briefs on file.

The following facts appear from the record before the Court: Petitioner is an alien Chinese, who lawfully entered the United States in 1923 and has ever since resided here. On July 30, 1942, an indictment was returned against him in the Northern division of this District charging him with concealing and facilitating the concealment of opium, contrary to the provisions of 21 U.S.C.A. § 174, Jones-Miller Act May 26, 1922, c. 202, 42 Stat. 596. On the same day, petitioner entered a plea of guilty, following which the court ordered him placed on probation for a period of one year and suspended imposition of sentence accordingly. The terms of the probation have been fully complied with.

On March 17, 1943, after original and appeal proceedings before the Immigration authorities, a warrant was issued for petitioner's deportation to China because of his conviction for violation of the Jones-Miller Act. On August 5, 1946, petitioner, not yet having been deported, this court made and entered, on application of his counsel, its recommendation against deportation. The recommendation was pursuant to the provisions of Title 8 U.S.C.A. § 155(a). Notwithstanding the court's recommendation against deportation, the respondent Commissioner claims the right to and therefore intends to deport petitioner. Hence this application for writ of habeas corpus.

Statutes Involved.

Petitioner was convicted on his plea of guilty of violating the following provisions of the Jones-Miller Act, 21 U.S.C.A. § 174:

"If any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisiction, contrary to law, or assists in so doing or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years. * * *" Feb. 9, 1909, c. 100, Sec. 2, 35 Stat. 614; May 26, 1922, c. 202, Sec. 1, 42 Stat. 596.

By Act of May 26, 1922 the Jones-Miller Act supra, was amended to add the following provisions appearing in 21 U.S.C.A. as Section 175: 21 U.S.C.A. § 175: "Any alien who at any time after his entry is convicted under section 174 of this title shall upon the termination of the imprisonment imposed by the court upon such conviction and upon. warrant issued by the Secretary of Labor be taken into custody and deported in accordance with the provisions of sections 155 and 156 of Title 8 or provisions of law hereafter enacted which are amendatory of or in substitution for such sections." Feb. 9, 1909, c. 100, Sec. 2, 35 Stat. 614; May 26, 1922, c. 202, Sec. 1, 42 Stat. 596.

By Act of February 18, 1931, as amended June 28, 1940, 8 U.S.C.A. § 156a, Congress provided as follows: 8 U.S.C.A. § 156a. "Any alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this section) who, after February 18, 1931, shall be convicted for violation of or conspiracy to violate any statute of the United States or any State, Territory, possession, or of the District of Columbia taxing, prohibiting, or regulating the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt, derivative, or preparation of opium or coca leaves, shall be taken into custody and deported in manner provided in sections 155 and 156 of this title." Feb. 18, 1931, c. 224, 46 Stat. 1171.

The amendment of 1940 to Section 156a struck out after the word "convicted," the words "and sentenced."

The deportation proceedings against petitioner were pursuant to section 156a as amended in 1940. By its terms Sec. 156a adopts the manner of deportation provided in 8 U.S.C.A. § 155. Subsection (a) of Section 155 contains the provisions relating to recommendations against deportation and in this respect provides: 8 U.S.C.A. § 155 (a). " * * * The provisions of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof, sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation to the Attorney General that such alien shall not be deported in pursuance of this chapter; * * *." Feb. 5, 1917, c. 29, Sec. 19, 39 Stat. 889.

Immediately following the above provisions of 155(a) it is provided: "nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment."

8 U.S.C.A. § 180b provides: 8 U.S.C.A. § 180b. "An alien sentenced to imprisonment shall not be deported under any provision of law until after the termination of the imprisonment. For the purpose of this section the imprisonment shall be considered as terminated upon the release of the alien from confinement, whether or not he is subject to rearrest or further confinement in respect of the same offense." Mar. 4 1929, c. 690, Sec. 3, 45 Stat. 1552.

## Contentions and Issues.

Counsel for petitioner contends:

(1) The court's recommendation against deportation, made and entered four years after defendant was placed on one year's probation, was nevertheless timely under 8 U.S.C.A. § 155(a) because sentence having been suspended and never thereafter imposed, the Court still (i. e. at the time of recommendation against deportation) had

power to sentence petitioner. Federal Probation Act, 18 U.S.C.A. § 725.

(2) That 8 U.S.C.A. § 155(a) and 8 U.S. C.A. § 180b, each contemplate the deportation of an alien convicted of violation of the narcotic statutes only after termination of an actual imprisonment.

(3) That petitioner is an addict and hence not deportable under 8 U.S.C.A § 156a.

Counsel for respondent contends:

(1) The portion of Section 155(a) relating to recommendations against deportation is no part of the manner of deportation. It therefore does not apply to aliens deportable under 8 U.S.C.A. § 156a by reason of conviction of a narcotic violation because it is only the manner of deportation outlined in Section 155(a) which is adopted by Section 156a. But even regarded as part of the manner of deportation, the court's recommendation against deportation, having been made more than thirty days after the entry of the order placing petitioner on probation and suspending imposition of sentence, came too late under 8 U.S.C.A. § 155(a).

(2) Imprisonment is not a condition precedent to deportation of such alien under 8 U.S.C.A. § 155(a) 8 U.S.C.A. § 180b or 21 U.S.C.A. § 175 because these sections merely postpone deportation until termination of imprisonment, if sentence of imprisonment be followed by an actual confinement.

(3) The Immigration records affirmatively establish, by petitioner's own testimony given at the deportation hearing, that petitioner is not an addict.

The issues to be decided are:

I. (a) Are the provisions of Section 155(a) relating to recommendations against deportation part of the manner of deportation and therefore applicable to aliens subject to deportation under Sec. 156a?

(b) Was the order of July 30, 1942 placing petitioner on probation and suspending sentence, itself a passing of sentence as well as an imposition of judgment, within the meaning of 8 U.S.C.A. § 155(a), thereby making the recommendation against deportation more than thirty days later, ineffectual?

II. Must petitioner have been actually imprisoned as a result of his conviction, and must imprisonment have terminated, before he is subject to deportation?

III. Is petitioner an addict exempt from deportation?

## Discussion.

■ I. (a) Section 156a, Title 8 U.S.C.A., pursuant to which petitioner is to be deported, provides that aliens convicted of violation of the narcotic laws shall be taken into custody and deported "in the manner" provided in Section 155. In Dang Nam v. Bryan, 9 Cir., 74 F.2d 379, 380, it was held that sentence is part of the manner of deportation within the meaning of Section 155 (a). It is true that Dang Nam v. Bryan was decided in 1934 at a time when Section 156a provided for the deportation of aliens convicted and sentenced. By the 1940 amendment to Section 156a aliens merely convicted of narcotic violations were made deportable, the words "and sentenced" having been stricken. Since some form of sentence impliedly follows conviction,[1] it is obvious that sentence is still a part of the "manner" of deportation, and hence Dang Nam v. Bryan supra, is still apposite.[2]

■ (b) We come to the major issue—the timeliness of the court's recommendation against deportation. The imposition of any sentence of fine and imprisonment within the limits prescribed by 21 U.S.C.A. § 174, for the offense for which petitioner was convicted, was suspended by the probation order of July 30, 1942. There is no dispute about the fact that under the Federal Probation Act., 18 U.S.C.A. § 725,[3] and the cases interpreting it, (Frad v. Kelly, 302 U.S. 312, 58 S.Ct. 188, 82 L.Ed. 262;

U. S. v. Moore, 2 Cir., 101 F.2d 56; U. S. Ex rel. Tomasello v. Smith, D.C., 50 F. Supp. 464) this court, at the time it recommended against deportation on Aug. 5, 1946, still possessed the power to revoke the suspension of petitioner's sentence and to sentence petitioner to imprisonment.[4] But notwithstanding the suspension of sentence and the still existent power of the court to sentence on August 5, 1946, it is my opinion that the probation order of July 30, 1942 was in itself also a sentence as well as a judgment. It was certainly a final judgment reviewable on appeal. Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497. Although probation is not a sentence in the orthodox sense, it is nevertheless a form of sentence,—"an authorized mode of mild and ambulatory punishment." Cooper v. United States, 5 Cir., 91 F.2d 195, 199. That portion of a probation order suspending imposition of sentence relates to sentence fashioned in the specific mode of commonly prescribed punishment, that is, fine or imprisonment. It does not however negate the sentence aspect of the probation order proper. In Archer v. Snook, D.C., 10 F.2d 567, 569, the court, referring to probation and suspension of sentence under the recently enacted Federal Probation Act, defined probation as " * * * really a new mode of punishment, to be applied by the judge in a proper case, in substitution of the imprisonment and fine prescribed by the criminal laws. For this reason its application is as purely a judicial act as any other sentence carrying out the law deemed applicable to the offense. * * * Though imposition of probation is thus really a sentence to punishment, yet in this act the term 'sentence' is used in opposition to 'probation,' and

---

[1] "Final judgment in a criminal case means sentence. The sentence is the judgment." Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204.

[2] Thus in Dang Nam v. Bryan, the court took the view that the words "in [the] manner provided in Section 155" had the same meaning in Section 156a as "in accordance with the provisions of section 155" had when used in 21 U.S.C.A. § 175, that is, all of the conditions contained in Section 155 were adopted.

[3] "At any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before the court. Thereupon the court may revoke the probation or the suspension of sentence, and may impose any sentence which might originally have been imposed." 18 U.S.C.A. § 725.

[4] The maximum period for which petitioner might have been sentenced under 21 U.S.C. § 174 was 10 years.

means a sentence to the punishments formerly in vogue." 10 F.2d at page 567.

The view that the order of July 30, 1942 was both a judgment and sentence compels the conclusion that, under Sec. 155(a), the court's recommendation against petitioner's deportation was too late. This is so unless it be held that the kind of sentence contemplated by Sec. 155(a) is one limited to fine or imprisonment. But such a holding would be illogical for it would lead to this: —that a recommendation against deportation would have to be made within thirty days of an order of probation if, when probation was granted, sentence had been imposed with execution thereof suspended; whereas, if imposition of sentence itself had been suspended, then by the mere difference in words used,[5] the court's power of recommending against deportation might continue for many years thereafter depending on the maximum penalty prescribed by law. The suspended sentence in the majority of cases in which probation is allowed never becomes an executed sentence.

It might be argued that probation, aimed, as it is, at rehabilitation, is inconsistent with deportation. But Congress apparently does not so regard it. Subdivision (b) of Section 155, prescribes what aliens, in addition to those deportable under other provisions of law, are subject to deportation. There then follows a provision to the effect that such an alien shall not be deported "until the termination of his imprisonment or the entry of an order releasing him on probation or parole."

I conclude therefore that the recommendation against deportation in petitioner's case, being more than thirty days after the judgment and sentence of July 30, 1942,

is ineffectual against petitioner's deportation.

■ II. Petitioner claims exemption from deportation because he has never been imprisoned. He relies on the clause in Section 155(a) providing that "nor shall any alien convicted as aforesaid (of a crime involving moral turpitude) be deported until after the termination of his imprisonment,[6] citing United States ex rel. Cassetta v. Commissioner of Immigration, 2 Cir., 1932, 56 Fed.2d 826. But Cassetta was construing, not Section 155(a), but 21 U.S.C.A. § 175, a part of the Jones-Miller Act.[7] It is true that petitioner was convicted of violating the Jones-Miller Act. And Section 175 of 21 U.S.C.A. Jones-Miller Act, does expressly predicate deportation "upon the termination of the imprisonment imposed by the court upon such conviction." But the Scope of Section 175 has been broadened by 8 U.S.C.A. § 156a and it is the latter section which authorizes the instant deportation proceeding. Dang Nam v. Bryan, supra. Under the terms of Section 156a, an alien convicted of any narcotic violation, including those prohibited by the Jones-Miller Act, is deportable in the manner outlined in Section 155. Section 156a does not require a prior termination of imprisonment. By virtue of Section 156a, conviction alone is sufficient for deportation.

We return, therefore, to Section 155 and a consideration of the provision there contained to the effect that no alien "convicted as aforesaid" shall be deported "until after the termination of his imprisonment." Considering this provision as a part of the manner of deportation adopted by Section 156a, I am nevertheless satisfied that what

---

[5] "The difference to the probationer between imposition of sentence followed by probation * * * and suspension of the imposition of sentence * * * is one of trifling degree." Korematsu v. United States, 319 U.S. 432, 435, 63 S. Ct. 1124, 1126, 87 L.Ed. 1497.

[6] He also points to the provisions of 8 U.S.C.A. § 180b to the effect that "An alien sentenced to imprisonment shall not be deported under any provision of law until after the termination of the imprisonment." It seems obvious, however, that this provision is not apropos to the

status of one who has received no sentence of imprisonment.

[7] Three other cases are cited by petitioner on this point. Each of them treats of the Jones-Miller Act in connection with Sec. 155. They are Hampton v. Wong Ging, 9 Cir., 299 F. 289, United States v. George Wing, D.C., 6 F.2d 896, and Weedin v. Moy Fat, 9 Cir., 8 Fed.2d 488. These cases did not involve deportation proceedings pursuant to Section 156a and are not therefore pertinent authority here.

is meant thereby is that deportation must await termination of imprisonment if there be a sentence to imprisonment, but not otherwise. The reason is this: The aliens who are there stated to be deportable after termination of imprisonment are those "convicted as aforesaid," that is, those convicted of crimes involving moral turpitude. Conviction of such crimes under Section 155 renders aliens deportable only when followed by sentence to imprisonment,[8] whereas, under 156a, conviction alone is sufficient to warrant deportation. It is clear, therefore, that the provision in Section 155 relating to termination of imprisonment is directed to cases described therein in which *conviction must be followed by sentence* of imprisonment before there may be deportation. In such cases deportation is postponed. If, under Section 156a conviction is followed by an actual imprisonment, then deportation must likewise await termination of that imprisonment under both Section 155 and Section 180b. But when no imprisonment is imposed on an alien deportable under Section 156a by virtue of conviction of a narcotic violation, the requirement as to termination of imprisonment contained in 155(a) is inapplicable.

Wilson v. Carr, 9 Cir., 41 F.2d 704 and U. S. ex rel. Robinson v. Day, 2 Cir., 51 F.2d 1022, relied on by petitioner in support of his contention to the contrary, are not apposite. These cases merely hold that under Sec. 155(a) an alien convicted of a crime involving moral turpitude, (grand theft in the first case and forgery in the second case) before being subject to deportation under that section, must have been sentenced to imprisonment for a term of one year or more. They do not relate to cases of aliens convicted of narcotic violations who are subject, upon conviction alone, to deportation under Sec. 156a.

[redacted] III. The record of the deportation proceedings against petitioner fully disclose, by petitioner's own admissions that, although not a dealer in or peddler of narcotics, he was not an addict, but merely an occasional user of opium.[9] He therefore cannot, under Section 156a, claim exception from deportation on that ground. Ow Tai Jung v. Haff, 9 Cir., 89 F.2d 329; Mow v. McGrath, 9 Cir., 101 Fed.2d 982.

For the reasons stated, the petition for the writ of habeas corpus is denied and the proceeding is dismissed.

---

8 The only aliens deportable under this section because of conviction of crimes involving moral turpitude are: "* * * any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry;" and "* * * any alien convicted and imprisoned for a violation of any of the provisions of section 138 of this title;" Sec. 138 having to do with the importation of aliens into the United States for immoral purposes.

9 "Q. Are you an addict to narcotic? A. No.

"Q. Do you use narcotics? A. Once in a while.

"Q. How often do you use narcotics? A. Not very often.

* * * * * * *

"Q. Are you positive that you are not an addict? A. Yes I am positive I am not an addict."

Warrant Hearing Feb. 8, 1943.