Karl Friedrich **HALLER**, Petitioner,

v.

P. A. **ESPERDY**, as District Director of the Immigration and Naturalization Service, Respondent.

No. 506, Docket 31541.

United States Court of Appeals
Second Circuit.

Argued May 15, 1968.

Decided July 3, 1968.

James J. Cally, New York City, for petitioner.

Daniel Riesel, Sp. Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Francis J. Lyons, Sp. Asst. U. S. Atty., on the brief), for respondent.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Karl Friedrich Haller petitions for review of a decision of the Board of Immigration Appeals ordering his deportation as an alien who has been convicted of two crimes involving moral turpitude. Petitioner offers several reasons why the deportation order should not be enforced. We deal only with the argument that one of his convictions should not be used as a basis for deportation.[1] For reasons given below, we remand the matter to the immigration authorities for further proceedings.

---

1. Petitioner also claims that the Special Inquiry Officer abused his discretionary authority in not adjusting petitioner's status under 8 U.S.C. § 1255 and that the absence of counsel on the first day of his hearing violated his constitutional rights.

The Immigration and Naturalization Service commenced deportation proceedings against petitioner in September 1965, alleging that he was subject to deportation under 8 U.S.C. § 1251(a) (4) for having been convicted of two crimes involving moral turpitude after entry into the United States. That statute provides as follows:

> (a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—
>
> * * * * * *
>
> (4) * * * at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial * * *.

Petitioner falls squarely within the reach of the statute. He is an alien, a native and citizen of Germany; he last entered the United States in June 1953; and in 1962 and 1963, he was convicted of separate crimes involving moral turpitude, although the moral quality of the former is, as will be seen below, open to question. There is no such nice question concerning the 1963 conviction; it was for using and conspiring to use the mails and interstate telephone communications to defraud.[2] However, another part of section 1251 provides in subsection (b) (2):

> (b) The provisions of subsection (a) (4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply * * (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested

State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter. * * *

The section thus offers the sentencing judge a chance to ameliorate the harsh sanction of deportation; the judge's use of that opportunity in this case provides the central issue on appeal.

In 1951, Haller married a permanent resident of the United States; two children were born of the union in the next few years. In 1957, upon application of his wife, Haller became a lawful permanent resident. 8 U.S.C. § 1255. However, the marriage soon became one in name only. In 1959, Haller and his wife separated; for many years the children have resided with their mother at an address unknown to petitioner, although he has contributed to their support through a third party.

Petitioner's 1962 conviction was in the County Court of the County of Westchester. The charge was "Issuing a Fraudulent Check as a Misdemeanor—Petit Larceny."[3] Petitioner's brief in this court asserts that the blame in the transaction was actually his wife's, but that he pleaded guilty in order not to implicate her. Although there is nothing in the record to confirm this statement, it is clear that the county judge did not regard Haller as particularly depraved. After petitioner's guilty plea, he was sentenced to time already spent in jail, which was about ninety days, and required to make restitution of $140. More significantly, the judgment of conviction provided as follows:

> It is the Court's interest in sentencing the defendant on this conviction that pursuant to Sec. 1251(b) (2) of Title 8 U.S.C.A. that the defendant shall not be deported pursuant to provision Sec. 1251 (sub. a) (4) Title 8 U.S.C.A. The Court hereby recommending to the

2. United States v. Karl Haller, Cr. 157–178 (S.D.N.Y.1963), aff'd in open court, 333 F.2d 827 (2d Cir. July 7, 1964).

3. The conviction was apparently under New York's former Penal Law, McKinney's Consol.Laws, c. 40, § 1292-a. Under that section, intent to defraud was a necessary element. See People v. Weiss, 263 N.Y. 537, 189 N.E. 686 (1933).

Attorney General of the United States that this Alien defendant not be deported. Accordingly the Court will give due notice to the representative in New York, of the U. S. Immigration Service and the District Attorney of Westchester County.

Unfortunately for petitioner, there is no proof that such notice to the Service was ever given; indeed, the records indicate that it was not.[4] Relying upon the lack of notice, the Special Inquiry Officer and the Board of Immigration Appeals held that the judge's recommendation against deportation was ineffective. Petitioner argues to us that this rigidity on the part of the Service was wrong and uncalled for; the Service responds that the statute requires the result it reached.

We must decide whether the procedural defect necessarily deprived the judge's recommendation of all effect. We state the issue that way because there can be no question about where the equities lie. The sentencing judge, who observed petitioner and was obviously familiar with the nature of his crime, did not think that Haller's conduct merited deportation. Moreover, the court assumed the responsibility of giving notice to the immigration authorities; thus, petitioner cannot fairly be charged with that default. And finally, deportation itself is a drastic measure; as Learned Hand once put it, deportation is to many "exile, a dreadful punishment, abandoned by the common consent of all civilized peoples." United States ex rel. Klonis v. Davis, 13 F.2d 630 (2d Cir. 1926). But that observation was made in a case in which Judge Hand also concluded that the sentencing court was powerless to grant the relief requested; i. e., to make a "nunc pro tunc" amendment of a sentence and recommend against deportation sixteen months late. This serves to emphasize

that we are called upon not to determine equities but to construe a statute, processes which unfortunately do not necessarily lead to the same result.

Examining the section more closely, we are struck by the absolute discretion which Congress vested in the sentencing judge to decide whether a particular conviction should be disregarded as a basis for deportation. Thus, the Attorney General is given no choice; the sentencing court's recommendation, if made in accordance with the statute, must be followed. See United States ex rel. Santarelli v. Hughes, 116 F.2d 613, 616 (3d Cir. 1940). Also, the purpose of the notice provision is apparent: to give those who might object to eliminating deportation as a consequence of a conviction—particularly the immigration authorities—an opportunity to do so. The statute was changed in 1952 to make this explicit. Prior thereto, only notice to "representatives of the State" was required; now the statute also requires notice to representatives of "the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter."[5] The revised statute also emphasizes that the trial judge's recommendation should be obtained at the time of sentence. Thus, it requires that the recommendation be made "at the time of first imposing judgment or passing sentence, or within thirty days thereafter"; the word "first" was added in the 1952 revision. See United States ex rel. Piperkoff v. Esperdy, 267 F.2d 72 (2d Cir. 1959).

However, none of this furnishes a clear answer to the question whether the judge's timely recommendation had no effect because of lack of prior notice to the Service. The situation appears to be unique in the reported cases in the courts, which all deal with attempts to

4. No question has been raised before us concerning lack of notice to "representatives of the interested State * * * and prosecution authorities." We note, however, that the judgment of conviction indicates the obvious, that an assistant district attorney was present at sentence.

5. See comments of the General Counsel of the Immigration and Naturalization Service in his analysis of S. 716, 82d Cong., p. 241–13 (1951). See also United States ex rel. Piperkoff v. Esperdy, 267 F.2d 72, 74 n. 2 (2d Cir. 1959).

make a recommendation well after expiration of the statutory period of "thirty days" after the imposition of sentence, e. g., United States ex rel. Piperkoff v. Esperdy, supra (three years); United States ex rel. Klonis v. Davis, 13 F.2d 630 (2d Cir. 1926) (sixteen months); Ex parte Eng, 77 F.Supp. 74 (N.D.Calif. 1948) (about four years). These decisions all denied effect to a tardy recommendation. However, relief against deportation was granted in Sawkow v. INS, 314 F.2d 34 (3d Cir. 1963), even though the period between first sentence and ultimate recommendation was about one year. The court there relied on the fact that the first sentence was vacated six months after imposition, the state filed a new accusation and the original indictment was dismissed, and the recommendation on the new sentence, made after proper notice, was timely.[6] We have found no judicial decision in which the recommendation was timely made when sentence was imposed, but without proper notice to the Service. And we have not uncovered any such case in which the court expressly assumed the burden of giving such notice in its judgment of conviction, but failed to do so.[7]

■ The statute is unclear as to the effect of lack of notice. We are thus left with the problem of applying section 1251(b) (2) as best we can to these unusual facts with little help from the precedents or legislative history. We keep in mind that deportation is a drastic measure which amounts to a grave penalty, and "we will not assume that Congress meant to trench on [an alien's] freedom beyond that which is required by the narrowest of several possible meanings of the words used." Costello v. INS, 376 U.S. 120, 128, 84 S.Ct. 580, 585, 11 L.Ed.2d 559 (1964), citing Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S. Ct. 374, 92 L.Ed. 433 (1948). The pur-

poses of the statute have been achieved in part here because the recommendation was timely made by the most knowledgeable party. The sentencing court did not get the benefit of the views of the Service, but presumably that can still be achieved. Moreover, doing so after the recommendation would not be a complete break with Service practice; we were advised at oral argument that had the Service actually been notified within the thirty-day period after sentence, exactly that after-the-event procedure would have been followed. We think that following that course now on these facts is not inconsistent with congressional intent. In fact, it is clear that the qualifying provisions of section 1251(b) are an important part of the legislative scheme expressed in section 1251(a) (4), and we should be wary of narrowing the scope of the former. See Costello v. INS, supra; Gubbels v. Hoy, 261 F.2d 952, 954 (9th Cir. 1958).

■ It is true that the statute contemplates obtaining the sentencing court's reactions to Service views at a time substantially contemporaneous with the sentencing, and a reconsideration now, after hearing from the Service, will hardly be that. But cases in which the sentencing court assumes the responsibility of giving notice must be few and far between. In any other, the burden of notice presumably would fall on the alien defendant, so that if not carried out within the statutory period the recommendation would ordinarily be ineffective. It should be noted that Haller's reliance on the judge's assumption of responsibility was not unjustified. There is apparently no regulation governing the responsibility for giving notice. The Service has recognized the statute's ambiguity, and takes the position that notice can be given by counsel or by the court. See Matter of P., 8 I.

---

6. The Service will give effect to a recommendation made upon proper notice, when sentence is reimposed after the original conviction was set aside by a writ of *coram nobis*, if the court's sole basis for granting the writ was not to make a rec-

ommendation against deportation. See Matter of P., 9 I. & N.Dec. 293 (A.G. 1961).

7. Cf. Matter of W., 9 I. & N.Dec. 1 (1960), in which the judge wrote a letter to the local Service representative.

& N.Dec. 689 (1960). Cf. Wallach v. Lieberman, 366 F.2d 254, 259 (2d Cir. 1966).

The Service argues that United States ex rel. Piperkoff, supra, compels us to hold the recommendation a nullity. We do not agree. In that case, one of the alien's two convictions originally occurred in 1935; it was set aside on a writ of *coram nobis* in 1954 because of defects arising from lack of counsel. In resentencing the alien at that time, the state court recommended against deportation; however, no notice was given to the Service. In 1957, an attempt was made to correct this error. The 1954 judgment was vacated and the alien was again resentenced with the same recommendation against deportation; this time, however, the Service was properly notified first. This court held that the 1957 recommendation was ineffective because it was not made "at the time of first imposing judgment," which it construed to be 1954. In *Piperkoff*, we did not deal with the effect of the 1954 recommendation, since the alien there conceded that it was ineffective because notice was not given. Moreover, in that case the sentencing court had not, as here, assumed the burden of giving such notice.

In short, we do not feel compelled by the words or history of the statute or by precedent to declare the 1962 recommendation of the sentencing judge ineffective because of lack of notice, when that burden was explicitly assumed by that court. On these facts we conclude that the statute may fairly be interpreted to give the timely recommendation on the bad check charge the following limited effect: It will prevent use of that conviction as a basis for deportation until such time as the Service presents its views in opposition, if any, to the sentencing court, and that court acts upon them. It may be that the Service upon reconsideration of the nature of the bad check conviction, will reassess its position.

The order of the Board of Immigration Appeals is reversed and the matter remanded for further proceedings consistent with this opinion.