Jairo VELEZ–LOZANO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 71–1125.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 29, 1972.

Decided June 7, 1972.

Mr. Arthur J. Whalen, Jr., Washing-
ton, D. C., for petitioner.

Mr. Murray R. Stein, Atty., Dept. of
Justice, of the bar of the Court of Ap-
peals of Maryland, pro hac vice, by spe-
cial leave of Court, with whom Messrs.
Thomas A. Flannery, U. S. Atty. at the
time the brief was filed, George W.
Masterton, Atty., Dept. of Justice, and
John A. Terry, Asst. U. S. Atty., were
on the brief, for appellee.

Before FAHY, Senior Circuit Judge
and TAMM and MacKINNON, Circuit
Judges.

PER CURIAM:

In this appeal we are asked to deter-
mine whether the Immigration and Nat-
uralization Service (hereinafter the
"Service") is empowered to order the
deportation of Mr. Velez, a Colombian

citizen, for engaging in the act of consensual sodomy. This determination can only be made upon a finding of whether Velez has been convicted of a crime of moral turpitude and whether he has been sentenced to a term of confinement. A subsidiary issue presented for our consideration is what effect, if any, should be given to a *nunc pro tunc* suggestion made by the trial judge which recommended against deportation. After considering the argument and submissions of counsel and examining the pertinent authorities we conclude that the deportation order of the Board of Immigration Appeals must be affirmed.

Jairo Velez-Lozano is a citizen of Colombia which is the nation of his birth. He was admitted to the United States at Miami, Florida, as a permanent resident on March 20, 1964. In an indictment filed with the Circuit Court of Arlington County, Virginia, Velez was charged with committing sodomy by force on October 19, 1968. The indictment was amended on June 25, 1969, and petitioner pleaded guilty to the offense of consensual sodomy. The circuit court judge sentenced Velez on August 8, 1969, after reviewing the presentence report, to a term of three years imprisonment. The judge then suspended the sentence and placed Velez on probation without supervision on the condition that he remain on good behavior for the three year period. On December 11, 1969, an Order to Show Cause and Notice of Hearing were served on Velez by the Immigration and Naturalization Service. The Service charged that petitioner was deportable under Section 241(a) (4) of the Immigration and Nationality Act, 8 U. S.C. 1251(a) (4) (1964), since he had been convicted of a crime involving moral turpitude and sentenced to a term of confinement within five years of his entry into the United States.

At a hearing held on December 22, 1969, Velez admitted the allegations of fact contained in the Order to Show Cause. Petitioner advised the Special Inquiry Officer that he did not know that his conviction would render him subject to deportation. Similarly, petitioner informed the Special Inquiry Officer that he was unaware that the sentencing judge would have to recommend against deportation at the time of imposing sentence. Petitioner was then informed by the Special Inquiry Officer that any recommendation against deportation by the sentencing judge would have to be received within 30 days of sentencing and that no such recommendation had been received.

After earlier admitting his deportability Velez chose to now challenge this status alleging that his sodomy conviction was based on an unconstitutional state statute. He was advised by the Special Inquiry Officer that the immigration hearing was not the proper forum for constitutional challenges to state statutes. The Special Inquiry Officer then handed down an oral opinion finding that Velez was deportable as charged under Section 241(a) (4) of the Immigration and Nationality Act. Petitioner was further informed that he would not be eligible for any statutory relief from deportation, but that after deportation he might be able to *reenter* this country if found eligible for a waiver of excludability in accordance with Section 212(h) of the Act, 8 U.S.C. 1182(h).

On January 2, 1970, petitioner appealed the decision of the Special Inquiry Officer to the Board of Immigration Appeals. Before hearing by the Board, Charles S. Russell, Circuit Judge for Arlington County, Virginia, sent a letter to the Attorney General recommending, *nunc pro tunc*, against deportation. In his letter dated January 28, 1970, Judge Russell wrote that he would have been glad to write to the Attorney General recommending against deportation within 30 days had he known of the statutory requirement at the time of sentencing. He concluded his letter by writing: "Under these circumstances, this letter may be considered a recommendation against deportation, *nunc pro tunc*, if Federal law will so permit." (R. 18.) Following a hearing the Board dismissed

petitioner's appeal, whereupon this petition for review was filed.

The first contention raised by petitioner is that the act of which he was convicted is not a crime of moral turpitude within the scope of the immigration laws. In the instant case petitioner pleaded guilty to an indictment which charged him with committing anal sodomy with consent. The complainant, Gladys Villarreal, was a friend of Velez's wife, and both she and petitioner are heterosexual adults. Miss Villarreal was not charged with any crime. Section 241(a) (4) provides for the deportation of an alien who "is convicted of a crime involving moral turpitude committed within five years after entry [to the United States] and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more . . . . ."

Despite petitioner's lengthy argument that consensual sodomy is not a crime involving moral turpitude we are unable to agree with him. Sodomy is a crime of moral turpitude in Virginia, Code of Virginia, § 18.1–212, and is still considered a felony in the District of Columbia, 22 D.C.Code 3502. Similarly, the Board has held the crime of solicitation to commit sodomy was a crime involving moral turpitude as early as 1949. In the Matter of K_____, 3 I & N Dec. 575 (BIA 1949). The argument advanced by petitioner that the Virginia sodomy statute is unconstitutional is also without merit. *See* Towler v. Peyton, 303 F.Supp. 581 (W.D.Va.1969).

The second issue for us to consider is whether petitioner's sentence is one of confinement within the meaning of Section 241(a) (4) of the Act. Mr. Velez contends that since his sentence was suspended in whole, and since he was placed on probation without any supervision he was not sentenced to a term of confinement. It has been held that the conviction of an alien which was followed by a suspended sentence and probation is still considered a "conviction" whether there was actual confinement or not. Wood v. Hoy, 266 F.2d 825 (9th Cir. 1959). In the case of United States ex rel. Fells v. Garfinkel, 158 F.Supp. 524 (W.D.Pa.1957), affirmed, 251 F.2d 846 (3rd Cir. 1958), the district court, in comparing Section 241(a) (4) with comparable provisions of the Immigration Act of 1917, stated:

In enacting the Immigration and Nationality Act in 1952, Congress changed the language of this section. [Section 19 of the 1917 Act] As quoted above, Section 241 of the Act provides for the deportation of an alien who has been "either sentenced to confinement or confined therefore" for a year or more. *The quoted language of Section 241 by including the term "confined" in the disjunctive indicates an intention to differentiate and further specify the meaning of the term "sentenced to confinement" so as to include those sentences under which there is no actual imprisonment.* (Emphasis supplied.)

*Id.* at 525.

Thus, in the case at bar it is clear that while Velez was never imprisoned in *durance vile* he was sentenced to a term of confinement. The essential element with reference to the Act is the imposition of sentence rather than the actual serving of sentence. Petitioner's reliance on Holzapfel v. Wyrsch, 157 F. Supp. 43 (D.N.J.1957), is illfounded. *Holzapfel* involves an alien sentenced under the New Jersey Sex Offenders Act for treatment for behavior which was both compulsive and repetitive in connection with sexual offenses. The court held that this was not a sentence to confinement but to treatment. We are at a loss in determining the relevance of *Holzapfel* to Mr. Velez's case and find it inapplicable.

Finally we must determine what weight, if any, is to be given to the trial judge's *nunc pro tunc* recommendation to the Attorney General against deportation. Under the terms of Section 241(b) (2) of the Act, 8 U.S.C. 1251(b) (2) a recommendation against deporta-

**1308**

tion must be sent to the Attorney General within 30 days of sentencing. Such a recommendation, if timely issued, is absolutely binding on the Attorney General and leaves him with no discretionary authority. Haller v. Esperdy, 397 F.2d 211, 213 (2nd Cir. 1968); United States ex rel. Santarelli v. Hughes, 116 F.2d 613, 616 (3rd Cir. 1940). However, the cases are equally clear that recommendations issued after the 30-day cut-off period cannot be given *nunc pro tunc* effect. United States ex rel. Piperkoff v. Esperdy, 267 F.2d 72, 74 (2nd Cir. 1959); United States ex rel. Klonis v. Davis, 13 F.2d 630 (2nd Cir. 1926). In our instant case the trial judge, petitioner's trial counsel, and, indeed petitioner himself were all ignorant as to the 30-day recommendation requirement and it is on the basis of this ignorance that petitioner seeks an exception from what are now well-established principles of law. This was precisely the fact pattern before the Ninth Circuit last year in Marin v. Immigration and Naturalization Service, 438 F.2d 932, 933 (9th Cir. 1971). In that case the court held that even in light of these seemingly mitigating circumstances the deportation order had to stand.

 We reach our decision in this case reluctantly. While we are without doubt as to the law in this case, we are troubled by a deportation that will now occur because of failings in the trial judge and petitioner's trial counsel. Petitioner was bound to these men for justice in a country where he was a stranger. Every law student is impressed early in his legal education with the maxim that "every man is presumed to know all the law," however, that axiomatic platitude cannot now serve as a justification for the actions of the Service or this court. In a brief opinion in 1926 Judge Learned Hand stated that he was powerless to accept a *nunc pro tunc* recommendation against deportation; yet he went on to deplore the potential deportation of the alien in that case. He referred to the impending act of deportation as ". . . a cruel and barbarous result

[which] would be a national reproach." United States ex rel. Klonis v. Davis, *supra*, 13 F.2d at 631. We are of the same feeling in the Velez case. Deportation here would be harsh and unjustifiable. While the Service has the *legal* power and authority this court hopes that they take a moment to examine the *equities* of this case before proceeding further.

Affirmed.

FAHY, Senior Circuit Judge, concurring in part, dissenting as to affirmance:

I concur in the court's position that the act of which appellant was convicted is a crime of moral turpitude within the scope of the immigration laws. My dissent from affirmance of the deportation order is based on the view that the recommendation of the sentencing court, though made more than 30 days after sentencing, should be given effect in a manner to be described. In such a case as this it is provided by 8 U.S.C. § 1251(b)(2), that deportation shall not be ordered,

if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.

I interpret the time provision as directory rather than mandatory, and I also conclude that the court's recommendation satisfies the notice requirement under the reasoning of the Second Circuit in Haller v. Esperdy, 397 F.2d 211 (1968).

I

First, the relevant factual background. Upon receipt of the guilty plea the state court judge, on August 8, 1969, sen-

tenced appellant to three years imprisonment, but suspended the sentence and placed him on probation without supervision. The report of the pre-sentence investigation of the same date, which is before us, is comprehensive. It includes the result of discussions between the officer and appellant, with the latter's wife acting as interpreter. The report is most favorable to appellant. It indicates the investigating officer's confidence in appellant's future. It explains the mitigating circumstances which led to the offense, prior to which appellant had no arrest record either as a juvenile or adult. The report concludes:

It is respectfully recommended that the Court consider a general suspended sentence conditioned on his uniform good behavior, without supervision, because, as indicated above, his greatest hurdle will be with the immigration authorities who will have to make the final decision whether he stays in this country or not.

The officer thus mistakenly advised the court that the immigration authorities "have to make the final decision whether he stays in this country or not," which is inconsistent with Section 1251(b) (2). The mistake was later corrected, and promptly thereafter in a letter to the Attorney General of the United States, dated January 28, 1970, the sentencing judge recommended against deportation as follows:

Counsel for Jairo Velez have informed me by letter dated January 21, 1970 that he is presently involved in deportation proceedings pursuant to 8 U.S.C. sec. 1251(a)(4) by reason of a sentence imposed in this court on August 8, 1969 in the case of Commonwealth of Virginia v. Jairo Velez, C–6297.

I am further informed that 8 U.S.C. sec. 1251(b) provides an exception to the statutory deportation requirement where the sentencing judge makes ·a recommendation against deportation to the Attorney General of the United States within 30 days after the imposition of sentence.

At the time of sentencing I was satisfied, from the report of the probation officer, that the defendant's violation of the law was an unfortunate response to an exceptional situation rather than evidence of an antisocial pattern of behavior. For this reason the execution of sentence was suspended entirely, without any requirement of probation supervision. This procedure is invoked only in those rather rare cases in which the court is of the opinion that the defendant is remorseful, understands his situation, is determined to refrain from future violations and is capable of rehabilitating himself as a useful citizen without the help of probation.

Had the statutory requirement been called to my attention at the time of sentencing, I would have been glad to have written to you recommending against deportation, within 30 days.

I have had no report from the Virginia authorities concerning any violation, by the defendant, of the conditions of his suspended execution of sentence, and assume that his conduct has been entirely satisfactory to them since August 8, 1969. Under these circumstances this letter may be considered a recommendation against deportation, *nunc pro tunc*, if Federal law will so permit.

The letter verifies that had the judge known when appellant's case was before him that he possessed the authority to prevent deportation, he would have written the Attorney General within the time specified. Moreover, the delay which occurred beyond the thirty days was only four and a half months. No intervening harm to the public, or otherwise, had occurred, although the proceedings before the Service resulting in the order of deportation under review had taken place.

Two questions arise: one, whether the lack of the notice referred to in Section 1251(b) (2) prior to the recommenda-

tion, rendered it ineffective, and, two, whether the thirty days provision was directory or mandatory.

## II

As to the first of these questions, in the well reasoned opinion in Haller v. Esperdy, *supra,* where, however, the recommendation was made within the 30 days, the court held that the judge's recommendation itself was sufficient notice. The court stated:

We must decide whether the procedural defect necessarily deprived the judge's recommendation of all effect. We state the issue that way because there can be no question about where the equities lie. The sentencing judge, who observed petitioner and was obviously familiar with the nature of his crime, did not think that Haller's conduct merited deportation. Moreover, the court assumed the responsibility of giving notice to the immigration authorities; thus, petitioner cannot fairly be charged with that default. And finally, deportation itself is a drastic measure; as Learned Hand once put it, deportation is to many "exile, a dreadful punishment, abandoned by the common consent of all civilized peoples." United States ex rel. Klonis v. Davis, 13 F.2d 630 (2d Cir. 1926). But that observation was made in a case in which Judge Hand also concluded that the sentencing court was powerless to grant the relief requested; i. e., to make a "nunc pro tunc" amendment of a sentence and recommend against deportation sixteen months late. This serves to emphasize that we are called upon not to determine equities but to construe a statute, processes which unfortunately do not necessarily lead to the same result.

397 F.2d at 213. The court concluded:

[T]he statute may fairly be interpreted to give the timely recommendation on the bad check charge the following limited effect: It will prevent use of that conviction as a basis for deporta-

tion until such time as the Service presents its views in opposition, if any, to the sentencing court, and that court acts upon them.

397 F.2d at 215.

The court distinguished United States ex rel. Piperkoff v. Esperdy, 267 F.2d 72 (2d Cir. 1959); United States ex rel. Klonis v. Davis, 13 F.2d 630 (2d Cir. 1926), and Ex parte Eng, 77 F.Supp. 74 (N.D.Cal.1948), cases involving tardy recommendations—*Piperkoff,* three years after sentencing, *Davis,* sixteen months, and *Eng,* about four years. Moreover, the *Haller* court seemed to approve the disposition by the Third Circuit of Sawkow v. INS, 314 F.2d 34 (1963), even though the period between the first sentence and ultimate recommendation there was about one year. The court in *Haller* pointed out that in *Sawkow* the court relied on the fact that the first sentence had been vacated six months after imposition of the sentence, followed by a new accusation and the dismissal of the original indictment. A new sentence was imposed, followed by a recommendation of the judge within 30 days and after proper notice.

I would hold, upon the basis of *Haller* as well as under the principles of statutory construction hereinafter to be discussed, that the notice contained in the judge's recommendation should be given effect, subject, as in *Haller,* to opportunity to the Service to urge the judge to reconsider his recommendation.

## III

This brings me to the second question, whether the recommendation, not having been made until four and one-half months after the expiration of 30 days from the date of sentencing, may nevertheless be considered.

As *Haller* points out, the statute contemplates obtaining the sentencing court's disposition at a time substantially contemporaneous with the sentencing. In our case, there can be no question as to the judge's disposition at that time. It is clear that he would have recom-

mended against deportation had he known of his authority to do so. His unwitting failure to communicate his views within 30 days of sentencing should not defeat the primary purpose of Section 1251(b) (2) to prohibit the Attorney General from deporting an alien the judge feels should not be subject to such extreme punishment. Weighing the values involved—on the one hand avoiding the harsh consequence of deportation if the 30-day provision is construed to be directory, and on the other the administrative convenience which would be served by a mandatory construction—to adopt the latter construction would require the strongest indication of congressional intention that it should be done. No such intention emerges from the history or language of the provision, or from the nature of the official action involved.

A mandatory construction of the 30-day provision would be inconsistent with Supreme Court decisions which have construed statutes involving the possible deportation of an alien in a manner to avoid that harsh result where ambiguity or doubt arises from the language and context of the statute.

In Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948), the Court said:

> We resolve the doubts in favor of the [lenient] construction because deportation is a drastic measure and at times the equivalent of banishment or exile, Delgadillo v. Carmichael, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17. It is

the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.

The same attitude toward deportation under the immigration laws is reflected in Costello v. INS, 376 U.S. 120, 128, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964), where the Court refused to apply the *nunc pro tunc* fiction to ease the way to deportation.

Moreover, to construe the time provision as mandatory, would be inconsistent with long established general principles of statutory construction where the court is called upon to decide whether such a provision, applicable to official action, is directory or mandatory. The following statement of principles suggests the appropriate analysis:

> [A]lthough the legislative intent should be controlling . . . where the time, or manner of performing the action directed by the statute is not essential to the purpose of the statute, provisions in regard to time or method are generally interpreted as directory only. (Footnotes omitted.)

2 J. Sutherland, Statutes and Statutory Construction § 2804, at 217 (1943). *See also id.* §§ 2801–04 (Supp.1972) and 3 *id.* Ch. 58 (1943, Supp.1972).[1]

---

1. As a general rule, a statute which specifies a time for the performance of an official duty will be construed as directory so far as the time for performance is concerned,[74] especially where the statute fixes the time simply for convenience or orderly procedure.[75] But there are various exceptions. For instance, the language may be such that the performance of the act within or at the specified time, is imperative.[76] As a result, if the statute contains prohibitive or negative words relating to the time within which the act is to be performed, it will be considered mandatory.[77] Furthermore, a statute may

even make time the essence of the official act.[78] In such a case, the requirement as to the time of performance is also mandatory.[79] Moreover, the consequences of failing to perform the official act within or at the designated time, may be considered,[80] as indicative of the legislative intention.[81] Even the nature of the act is entitled to consideration.[82] (Footnotes omitted.)

Crawford, Statutory Construction, Interpretation of Laws § 269, at 535–36 (1940).

[W]here a statute fixes a time within which public officers are to perform some act touching the rights of others,

As to the legislative history of Section 1251(b) (2), no relevant intent is expressed in the House or the Senate Report [2] of the bill that ultimately became law, or in either of the two Conference Reports that were prepared.[3] The preoccupation of both Houses that pervades deliberations was the geographic limitation to restrict the influx of certain immigrant groups and the literacy test designed to prevent entry of the allegedly "meaner sorts" of persons.[4] Only a brief discussion on the House floor suggests concern on the part of a few Congressmen for the pressure that might be exerted on a judge were he free to write letters recommending against deportation a long time after sentencing.[5] Another expressed consideration was the freshness of the alien's case in the judge's mind. It was suggested that a court might recommend against deportation at the end of a twenty year prison sentence when recommendation would be of little value in relation to the offense for which the court sentenced the alien twenty years earlier.[6]

Neither of the above purposes, assuming from the scant history of this provision that they are reflected in the 30-day period, is served by construing the provision mandatorily in the present case.[7] The record reveals the disposition of the judge against deportation at the time he sentenced appellant; considerations of pressure are therefore irrelevant. Equally irrelevant is the consideration of staleness. We know that the lapse of time in this case did not affect the freshness of the facts in the judge's mind.

The 30-day provision seems clearly directory under applicable principles. To repeat, to hold it mandatory would have, as here, the harsh consequence of deportation to the alien and his wife. To hold it directory would cause no comparable harm. Moreover, the basic purpose of the statute, to make the recommendation of the sentencing court avail-

---

and there is no substantial reason apparent from the statute itself, from other statutes, or from the consequences of delay—e. g., a wrong to the intervening rights of third parties [105]—why the act might not be as well done after the expiration of the period limited as during the same, or indicating that the Legislature intended it should not be done at all if not within that period, the latter will, as regards third persons, be treated as directory, and the fixing of it will not invalidate or prevent official acts, under the statute, after the expiration of the prescribed period.[106] (Footnotes omitted.)

Endlich, Interpretation of Statutes § 437, at 620–21 (1888).

2. H.Rep.No.95, 64th Cong., 1st Sess. (1916) ; S.Rep.No.352, 64th Cong., 1st Sess. (1916).

3. Conf.Rep. Nos. 1266, 1291, 64th Cong., 2d Sess. (1917), reprinted at 54 Cong. Rec. 1289, 1488 (1917).

4. See, *e. g.*, 53 Cong.Rec. 4768–4816, 4841–85, 4932–62, 5023–52, 5164–94 (1916) ; 54 Cong.Rec. 152–62, 205–26, 253–77, 313–16, 994–97, 1289–95, 1488–95, 2442–57, 2616–29 (1917).

5. 53 Cong.Rec. 5169–70 (1916).

6. 53 Cong.Rec. 5170 (1916).

7. The only similar case to deal with the legislative history of the 30-day provision, decided in 1926, construed the provision to be mandatory on the assumption that because the suggestion of a Congressman made during a House debate that the judge be authorized to write a letter to the Attorney General "at any time" was not followed, and the 30-day time period emerged in the final version, Congress intended the provision to be inexorably construed for all purposes as mandatory. United States ex rel. Arcara v. Flynn, 11 F.2d 899 (W.D.N.Y.1926). It does not follow from a rejection of a loosely drawn "at any time" provision that Congress intended the 30-day provision to be construed mandatorily, particularly if the judge is ignorant of his power to prevent deportation. Moreover, the District Court in *Arcara* did not have the benefit of the Supreme Court decisions referred to above.

*Arcara* deals with the provision enacted in 1917, as part of § 19, 39 Stat. 874, ch. 29. In 1952, when Congress revised the immigration laws, the same 30-day provision was reincorporated into the present Section 1251(b) without any further light as to its proper construction in a case such as the present.

able to the alien and to the authorities, is defeated under a mandatory construction of the time provision.

I find nothing to support the view that it was the "manifest intention of Congress" that in a situation like the one before us the recommendation of Judge Russell should not be effective. There is not the slightest evidence that Congress, in vesting the recommendatory power in the sentencing court, contemplated that the court might not be aware of the power and, if the court were not, that the alien should be deported, even if the court, when becoming aware of its authority in the matter, promptly made the recommendation based on the situation as of the time of sentencing.

I do not intimate that the time is unlimited or uncontrolled. But sufficient unto the day is the problem thereof, and it would seem necessary now only to hold that the wisdom of the law places the 30-day provision in the directory category, and that, accordingly, Judge Russell's recommendation should be given effect, subject as in *Haller* to the right of the Service to seek, if so advised, reconsideration by the sentencing court.