[Crim. No. 22455. First Dist., Div. Two. Nov. 17, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
CAYETANO CAPARAS BORJA, Defendant and Appellant.

COUNSEL

Joe R. McCray and Anthony L. Head for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

DOLGIN, J.*—This is an appeal from an order of the superior court denying appellant's motion to set aside his pleas of guilty to violations of Penal Code sections 187 (murder) and 245, subdivision (b) (assault with a deadly weapon on a peace officer). Actually, the motion was labeled "Application to Withdraw and Re-enter Guilty Plea" and was made pursuant to Penal Code section 1016.5, subdivision (c). This

---

*Assigned by the Chairperson of the Judicial Council.

seemingly novel motion had as its reason the federal law relating to deportation of persons convicted of crimes.

The record reveals that appellant, a citizen of the Philippines, who was in this country on a visitor's visa, pled guilty to the above stated crimes on June 26, 1972. Probation was, of course, denied and he was sentenced to state prison for an appropriate period. Although the record is silent on this point, we presume that neither at the time of sentence nor within 30 days thereafter was a motion made to the sentencing court to recommend against deportation. After serving his sentence, appellant was duly paroled. His conduct and attitude during prison and on parole were exemplary. (See the opinion of this court so finding in *People* v. *Borja* (1980) 110 Cal.App.3d 378 [167 Cal.Rptr. 813], an appeal from a prior motion of appellant made to the superior court under Pen. Code, § 1203.4. The motion was denied and on appeal the order was affirmed on the basis of lack of jurisdiction in that Pen. Code, § 1203.4 applies only to persons granted probation.)

■ Penal Code section 1016.5 and its subdivisions were designed to give notice to persons pleading guilty to crimes, who are not citizens of this country, of the additional possible consequences of deportation or exclusion from the United States. On pleas taken after January 1, 1978, it is mandatory to set aside the plea of guilty when it is shown that the admonition was not given to a person facing the possible consequences of deportation or exclusion.

As to pleas of guilty made prior to 1978, Penal Code section 1016.5, subdivision (c), applies, giving the sentencing court "sound . . . discretion" to permit withdrawal of a guilty plea where no proper admonition was given before taking the plea. In fact in this case, the plea being made in 1972 and there being no statute or case law then requiring the admonition, it was not given.

In his motion the only reason expressed by appellant for the motion was to create a new date of sentencing. He offered in the motion to immediately replead guilty after the granting of the motion and further stated he would accept the same sentence subject to credit for time served and that the only consequence of his original plea that he wished to avoid was deportation or exclusion from the United States. A new date of sentencing for appellant's purpose was critical since the federal statute (8 U.S.C. § 1251(b)(2)) specifically states that a recommendation against deportation by the sentencing court (hereinafter RAD)

must be made at the time of first sentencing or within 30 days thereafter. Such RAD is binding on the United States Immigration and Naturalization Service. The critical portions of the federal statute are set out below.[1] In this case, if the plea of guilty was set aside then on notice to the prosecuting authorities and the immigration service a hearing would be held before the sentencing court to consider all the relevant circumstances, that court then to issue its recommendation for or against deportation.

At the very brief hearing in the superior court on the motion, appellant argued that his unquestioned outstanding rehabilitation entitled him to have his pleas set aside. The district attorney opposed the motion on the grounds that the crime, and circumstances around it, were so heinous as to in and of themselves preclude appellant from any benefit for reasons of public safety, and also argues that appellant's offer to re-plead guilty was unenforceable.

The court below ruled from the bench, denying the motion and in so ruling stated:

(1) One factor in denying the motion was that the conviction was for murder;

(2) The court had no control over what the immigration service did;

(3) The court concurred with the district attorney's opposition.

Appellant's sole contention on appeal is that the superior court judge abused his discretion in denying the motion.

We affirm the trial court's order on grounds not raised by counsel in their briefs.

Interpretation of the federal statute (8 U.S.C. § 1251(b)(2)) is crucial. We find no California cases in point. However, there are New York State cases and federal cases which thoroughly discuss the issue,

---

[1] 8 United States Code section 1251(b)(2), provides, in pertinent part, as follows: "The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter...."

all reaching the same result. We find those cases instructive and persuasive and the federal court decisions, practically speaking, binding. The rule that they reach is that unless the RAD is made at the time of or within 30 days of the original sentencing, it is not binding on the immigration service. Further, any attempt to circumvent the statute by amending the judgment nunc pro tunc or vacating the original judgment and resentencing is prohibited. Although under our California Penal Code section 1016.5, subdivision (c), the sentencing court has the power to vacate its judgment and issue a RAD, to do so would be an idle act since the federal immigration authorities are bound by the federal court's interpretation of the federal statute. In the following cases, the court believed the defendant morally entitled not to be deported but held the RAD must be issued within 30 days of the original first sentencing. (*United States* v. *Esposito* (E.D.N.Y. 1946) 67 F.Supp. 770; *People* v. *Ayiotis* (1966) 49 Misc.2d 831 [268 N.Y.S.2d 244]; *People* v. *Garcia* (1967) 53 Misc.2d 303 [279 N.Y.S.2d 288].) The latter case held that the 30-day time limitation after sentencing was "inviolate, inexorable and unalterable . . . ." (P. 290.)

More recently the United States Court of Appeals in *Velez-Lozano* v. *Immigration and Naturalization Serv.* (D.C.Cir. 1972) 463 F.2d 1305, held that the 30-day rule of 8 United States Code section 1251(b)(2) was mandatory and could not be avoided by a nunc pro tunc order.

*People* v. *Ayiotis, supra,* 268 N.Y.S.2d 244, a most instructive opinion, pointed out that there was a predecessor immigration statute which read originally "'at the time of imposing judgment'" and did not contain the word "'first'" which is in the present statute which now reads, "'at the time of [first] imposing judgment.'" (Pp. 247-248.) This case cited *United States* v. *Esperdy* (2d Cir. 1959) 267 F.2d 72, which definitely holds that the vacating of an original judgment for the sole purpose of repairing the omission to make the RAD, and reentry of judgment, would defeat the plain command of the statute which limits the extraordinary power of the state court. It further holds that amending the statute by inserting the word "first" was a definite statement of congressional intent to prevent the sentencing court from issuing a binding RAD after the 30 days after sentence has expired. This case specifically and expressly stated that it was interpreting federal law for the state courts to follow.

Therefore, to vacate and hold a hearing would be a substantial waste of the court's time and resources.

Although what is stated above definitely disposes of the issue on this appeal, it would appear to us, especially in view of the congressional intent to limit the power to issue a RAD to a period very close to the first sentencing, that the United States Congress did not intend that the sentencing court consider rehabilitation but did intend that the sentencing court consider the nature of the crime and then surrounding circumstances, including the present and past record of the defendant, much as a sentencing judge does when he considers factors in mitigation or aggravation when deciding to impose the lower, upper or middle term under California determinate sentencing. Finally, we believe that, under our existing law, after vacating the original guilty plea there would be no way to enforce a defendant's promise to replead guilty.

The order is affirmed.

Rouse, Acting P. J., and Smith, J., concurred.