**UNITED STATES of America, Appellee,**

v.

**Christopher B. YOUNG,
Defendant-Appellant.**

**No. 404, Docket 84–1221.**

United States Court of Appeals,
Second Circuit.

Submitted Nov. 14, 1984.

Decided Dec. 13, 1984.

Before OAKES and KEARSE, Circuit Judges, and POLLACK, District Judge.*

KEARSE, Circuit Judge:

Defendant Christopher B. Young appeals from a judgment of conviction entered in the United States District Court for the Western District of New York following a jury trial before Charles L. Brieant, Jr., *Judge* (sitting by designation), for bank robbery, bank larceny, and bank robbery with a dangerous weapon, in violation of 18 U.S.C. §§ 2113(a), (b), (d), and 2 (1982). The convictions under §§ 2113(a) and (b) were merged into the conviction under § 2113(d), and Young was eventually sentenced by John T. Elfvin, *Judge,* to imprisonment in the custody of the Attorney General for a period of six years as a Youthful

---

* Honorable Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

Offender, *see* 18 U.S.C. § 5010(b) (1982).[1] On appeal, Young contends principally that his arrest was without probable cause. We disagree and affirm the judgment of conviction.

## BACKGROUND

Most of the events that gave rise to Young's arrest on August 12, 1981, for bank robbery are described in our opinion in *United States v. Fisher*, 702 F.2d 372 (2d Cir.1983), in which we held that police officers lacked probable cause to arrest Young's codefendant, Leroy Fisher. The pertinent events were described by police officers at a suppression hearing.

At about 12:20 p.m. on August 12, a police radio transmission informed patrol cars that a certain branch of the M & T Bank in Buffalo had just been robbed by three tall black males, two of whom were thought to have been armed. The robbers had used a red automobile registered to Young, age 20–21, who lived at 254 Bissell Street. Police officers including Officer Ronald F. Skotnicki went to 254 Bissell where they learned that Young was not at home, having left earlier that day in his car with one Ronald Evans, who lived at 118 Moselle Street; Young and Evans were supposed to be painting a house on Moselle, which was one block west of Bissell. Young's wife described Young as a light-skinned Black with a heavy build and tightly curled hair.

At 12:34 p.m., Police Officer Joseph T. Ransford located Young's car parked, unoccupied, approximately in front of 43 St. Louis Street, which was one block west of Moselle. On a porch one or two houses south of Young's car Ransford saw three or four Black males; Ransford got a good look at one of the men, a light-skinned Black in his early twenties, wearing a large straw hat. Ransford parked his car around the corner from St. Louis at a point where he could observe Young's car and could not be seen by the men on the porch.

Skotnicki left Young's house and went to Moselle Street, anticipating that the robbers might try to go through backyards to get from St. Louis to Evans's home at 118 Moselle. He parked opposite 32 Moselle, which was back-to-back with the house at 43 St. Louis, not far from which Young's car was parked. About five minutes later, Fisher, a tall dark-skinned Black, emerged from the side of 42 Moselle and commenced to walk north on Moselle. About a minute later, a heavier young light-skinned Black wearing a straw hat walked out of a yard two houses south of 42 Moselle and began walking north. When Skotnicki and his partner drove up Moselle and stopped Fisher to question him, the husky, light-skinned young man "ducked back" into a backyard on Moselle.

Ransford, who had driven to Moselle from St. Louis, pursued this young man on foot with his revolver drawn, and found him sitting on a porch, staring straight ahead and panting. Ransford recognized him as one of the men he had seen on the porch at 43 St. Louis. Ransford told him to raise his hands and spread-eagle against the porch, and searched him for a possible weapon. Finding no weapon, Ransford holstered his gun and began to question the man, who said he was Christopher Young, that he lived at 254 Bissell, and that he owned a red car but did not know where it was. When asked what he was doing on the porch, Young stated that he had come to paint a house for a lady, but stated that he did not know her name. Ransford led Young out of the yard and to a police car, and told him he was under arrest.

Young, Fisher, and Evans were indicted on the bank robbery and larceny charges listed above. Prior to trial, Young moved for the suppression of various evidence against him on the ground that it was the product of his unlawful arrest without

---

1. Young was initially sentenced by Judge Elfvin in November 1982, following which, through no fault of Young, his counsel failed to file a notice of appeal. Judge Elfvin, finding that Young had thereby been deprived of the effective assistance of counsel, vacated the original judgment. Young was resentenced in June 1984, and his new counsel timely filed this appeal following the entry of the new judgment of conviction.

probable cause. Following an evidentiary hearing, Judge Elfvin denied the motion, finding that Young's arrest was "made on ample probable cause." At trial, Fisher testified for the government, and Young and Evans were convicted on all counts.

## DISCUSSION

The principal thrust of Young's appeal is that he was arrested when Ransford first approached him on the porch with gun drawn and told him to raise his hands, and that at that moment, prior to any of Young's statements, Ransford lacked probable cause to arrest him. Ransford testified that he did not arrest Young until after he had questioned him and was about to put him into the police car. Although Judge Elfvin found that there was probable cause for Young's arrest, he did not make a specific finding as to when the arrest occurred. We need not reach the question of whether Ransford's initial action when he found Young sitting on the Moselle Street back porch amounted to an arrest, however, since we conclude that there was probable cause to arrest Young at that moment.

The evidence that the officers had with respect to Young included the facts that Young was a tall, heavy-set, light-skinned Black male in his early twenties; he had left home in his car that morning; his car had been used in the robbery; the car was found 20 minutes later parked on St. Louis Street; a young light-skinned Black male in his early twenties wearing a straw hat was then on a porch on St. Louis near Young's car; five minutes later a husky young light-skinned Black male wearing a straw hat emerged from the side of a house on Moselle, which was back-to-back with St. Louis, and started north on Moselle; as soon as police officers intercepted Fisher, who was also proceeding north on Moselle, the light-skinned young man "ducked back" into the yards of Moselle, apparently attempting to avoid an encounter with the police; and he was recognized by the arresting officer as one of the men who had been on the porch on St. Louis near the car used in the robbery.

The fact that Young left home in his car that morning and had not returned warranted an inference that the man meeting Young's description on the St. Louis Street porch near Young's car was Young. *See, e.g., United States v. Gaines,* 563 F.2d 1352, 1357–59 (9th Cir.1977) (where car used in robbery one week before was being used by persons who matched descriptions of robbery suspects and one suspect said only he and one other person had driven the car in the past month, officer had probable cause to arrest occupants of car); *United States v. Baldwin,* 644 F.2d 381, 384 (5th Cir.1981) (probable cause existed for arrest where defendant matched description of *robber* and his truck had been used in robbery). This inference plus the facts that Young's car had been used in the robbery, that Young was near the car some 20 minutes later, and that he took action to avoid an encounter with the police upon seeing officers intercept Fisher were sufficient to warrant a person of reasonable caution in the belief that Young had been one of the robbers. As stated in *Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968), "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." We conclude that Ransford had probable cause to arrest Young when he found him on the Moselle Street back porch.

We have considered Young's other arguments on appeal and find them to be without merit.

## CONCLUSION

The judgment of conviction is affirmed.