*Affirmed in part and reversed and remanded in part.*

## ORDER

Upon consideration of appellant's motion for rehearing pursuant to Fed.R.App.P. 40(a), we conclude that appellant's motion for rehearing should be granted and find meritorious his contention that the grants of summary judgment in favor of Emma Blier and Rudolph Blier should be reversed. Consequently,

IT IS HEREBY ORDERED that appellant's motion for rehearing is granted and that the grants of summary judgment in favor of Emma Blier and of Rudolph Blier are hereby reversed.

5. In his appellate brief, Parent makes a number of arguments to the effect that if we reverse the grant of summary judgment on the ground that the statute of limitations has not run, we should in any event find summary judgment in his favor was proper. We decline to address these contentions, which were rejected by the magistrate. For there is no indication that Parent

Lyonel JANVIER, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 627, Docket 85-2306.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 1985.

Decided June 5, 1986.

Bartels, District Judge, sitting by designation, filed concurring opinion.

Amy Eppler, Law Student Intern, New Haven, Conn. (Mary A. McCarthy, Miriam Berkman, Stephen Wizner, Sally Zanger, Bob Solomon, Jerome N. Frank Legal Services Organization, New Haven, Conn., on brief), for plaintiff-appellant.

George A. Yanthis, Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty., for N.D.N.Y., Albany, N.Y., on brief), for defendant-appellee.

Before OAKES and KEARSE, Circuit Judges, and BARTELS, District Judge.*

KEARSE, Circuit Judge:

Plaintiff Lyonel Janvier, an alien who has served a term of imprisonment for smuggling and counterfeiting offenses, appeals from an order of the United States District Court for the Northern District of New York, Roger J. Miner, then-*District Judge*, denying his motion pursuant to 28 U.S.C. § 2255 (1982) to vacate his sentence. Janvier contended that he had been de- prived of his Sixth Amendment right to effective assistance of counsel at his sentencing by reason of his counsel's failures (1) to request, pursuant to 8 U.S.C. § 1251(b) (1982), that the sentencing judge recommend, either at sentencing or within 30 days thereafter, that Janvier not be deported as a result of his convictions, and (2) to advise Janvier that he would be deportable as a result of his convictions unless the sentencing judge recommended against deportation not later than 30 days after sentencing. The court denied the § 2255 motion on the ground that the alleged deprivation of the effective assistance of counsel did not occur at a critical stage of the criminal prosecution. On appeal, Janvier contends that this ruling was erroneous. We agree, and we vacate the order and remand for further proceedings.

## I. BACKGROUND

Janvier, a Haitian citizen, is a permanent resident alien who entered the United States lawfully in February 1981. In October 1982, he was arrested at the Canadian border and was charged with possession of $20,340 in counterfeit United States currency and of smuggling that currency into the United States, in violation of 18 U.S.C. §§ 472 and 545 (1982). Following a jury trial, Janvier was convicted as charged and was sentenced on January 21, 1983, to a total of four years' imprisonment. Janvier served the required portion of his prison term and was paroled in 1984.

As a result of his convictions and sentencing, Janvier apparently became subject to deportation pursuant to 8 U.S.C. § 1251(a)(4) (1982), which provides for the deportation, upon order of the Attorney General of the United States, of any alien who "is convicted of a crime involving moral turpitude committed within five years after entry" into the United States and is sentenced to or serves a prison term of one year or longer. Accordingly, upon his parole Janvier was released into the custody

---

* Honorable John R. Bartels, Senior Judge of the United States District Court for the Eastern Dis- trict of New York, sitting by designation.

of the Immigration and Nationalization Service ("INS") for deportation.

Section 1251(b) of 8 U.S.C., however, provides that § 1251(a)(4) is inapplicable if the sentencing judge, either at the time of sentencing or within 30 days thereafter, and after giving due notice to the appropriate authorities, recommends against deportation. Janvier apparently learned of the thrust of § 1251 only after the expiration of the 30-day period in which § 1251(b) relief against deportation could be obtained, and he filed his present motion for § 2255 relief after his release from prison. In support of his motion, he submitted the May 25, 1984 affidavit of Thomas J. Spargo, Esq., his appointed counsel at trial and sentencing.

Spargo stated that he had been unaware of § 1251(b) when he represented Janvier. Thus, Spargo never asked the sentencing judge to recommend against the deportation of Janvier. Nor did he advise Janvier that such relief against deportation might be available. Indeed, Spargo was unaware of § 1251(a)(4), and believes he may even have communicated to Janvier the opinion that the convictions would not make Janvier deportable. Relying on these assertions, which the district court noted were undisputed, Janvier contended that he had been deprived of his Sixth Amendment right to the effective assistance of counsel at sentencing. He requested that his 1983 sentence be vacated, that he be resentenced with the assistance of new counsel, and that the court hold a hearing at which he could present evidence in support of his request for a judicial recommendation against the use of his convictions as grounds for his deportation.

In a Memorandum-Decision and Order ("Decision") dated July 31, 1985, the district court declined to reach the question of whether counsel's assistance had been defective, ruling instead that the alleged ineffective assistance had occurred at a time other than a critical stage of a criminal proceeding. First, while recognizing that sentencing is such a critical stage and that a defendant has a Sixth Amendment right to the effective assistance of counsel at sentencing, the court reasoned that since § 1251(b) allows a recommendation against deportation to be made up to 30 days after sentencing, "§ 1251(b) relief exists independent of any sentence imposed upon a criminal defendant, and a failure by counsel to request it cannot be regarded as ineffective assistance at the sentencing phase, whether or not the application could have been made at the time of sentence." Decision at 5 (footnote omitted). Second, the court held that counsel's failure to pursue § 1251(b) relief after sentence had been imposed could not be the basis for an ineffective assistance challenge, since the Sixth Amendment right to counsel attaches only to criminal proceedings, and deportation is a civil proceeding. Thus concluding that Janvier had not been denied effective assistance of counsel at a critical stage of his criminal prosecution and that his sentence was therefore not "'imposed in violation of the Constitution or laws of the United States,'" Decision at 7 (quoting § 2255), the district court denied Janvier's motion. This appeal followed.

## II. DISCUSSION

■■■ As the district court recognized, it is well established that a defendant to a criminal prosecution has a Sixth Amendment right to the effective assistance of counsel at all critical stages of the prosecution where his substantial rights may be affected, and that sentencing is one such stage. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967); *see McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). It is similarly established that deportation proceedings are civil proceedings to which the constitutional protections applicable to criminal prosecutions do not apply. *Abel v. United States*, 362 U.S. 217, 237, 80 S.Ct. 683, 696, 4 L.Ed.2d 668 (1960) ("deportation proceedings are not subject to the constitutional safeguards for criminal prosecutions"). The principal question before us on this appeal thus is whether the recommendation envisioned by

§ 1251(b) should be deemed part of the sentencing stage of the criminal prosecution rather than part of the ensuing deportation proceedings.

### A. *The Relationship of § 1251(b) to Sentencing*

■ Section 1251 of 8 U.S.C. provides, in pertinent part, as follows:

(a) General classes

Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

....

(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore [*sic*] in a prison or corrective institution, for a year or more ...;

....

(b) Nonapplicability of subsection (a)(4)

The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the [INS], and prosecution authorities, who shall be granted an opportunity to make representations in the matter.

In concluding that Janvier was not denied effective assistance of counsel at a critical stage of his prosecution, the district court focused principally on § 1251(b)'s implicit permissiveness with respect to the time within which a request for 1251(b) relief may be made. We believe that the proper focus is not on the timing of the request but on the required timing of the recommendation; and, looking to a confluence of factors including the language, judicial interpretation, and legislative history of the section with respect to the identity of the decisionmaker, the nature of the decision, and the required timing of the recommendation, we conclude that the granting of § 1251(b) relief is part of the sentencing process.

First, the terms of the statute suggest that the § 1251(b) recommendation for nondeportation is part of the sentencing itself. The statute allows § 1251(b) relief to be granted only by the court that sentences the defendant. No other tribunal or official is given the authority to make a recommendation pursuant to this section. That fact indicates that the § 1251(b) process was intended to have at least a close relationship to sentencing.

Further, while § 1251(b) speaks in terms of the sentencing court's making a "recommendation," it is a recommendation that is binding on the Attorney General, for the section has consistently been interpreted as giving the sentencing judge conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation. *See, e.g., Haller v. Esperdy,* 397 F.2d 211, 213 (2d Cir.1968); *Velez-Lozano v. INS,* 463 F.2d 1305, 1308 (D.C.Cir. 1972); *United States ex rel. Santarelli v. Hughes,* 116 F.2d 613, 616 (3d Cir.1940). Those in charge of the deportation process, the immigration judge, the INS, the Attorney General, are given no authority to reject or disregard the recommendation; if the sentencing judge, having followed the procedures prescribed by the section, "recommends" against deportation, the Attorney General is simply not allowed to use the conviction as a basis for deportation. The confiding of such absolute discretion in the sentencing judge tends to support the view that the recommendation is part of the sentencing, for it is a normal part of the judicial function in sentencing to decide what penalty, within the statutory limits provided, shall be imposed on the convicted defendant in the circumstances of his case.

Finally, the statute by its terms sets the period within which the sentencing court's recommendation may be made. The period is of modest duration and the recommendation is thus strictly linked to the time of the first imposition of a valid sentence. All of

these facts support the inference that the recommendation was intended to be made as part of the process of sentencing the defendant.

This inference is supported by the section's legislative history. Sections 1251(a)(4) and 1251(b) had their origins as part of § 19 of the Immigration Act of 1917, and the House of Representatives debate that led to the enactment of the section in virtually its present form highlights two points that support the view that § 1251(b) relief was intended to be part of the sentencing process: (1) that Congress was of the view that the § 1251(a)(4) provision for deportation of aliens routinely on account of their conviction of serious crimes was part of the penalty for the crimes, and it wished to remove that part of the penalty in any case in which the judge who best knew the facts thought the drastic penalty of deportation was unwarranted; and (2) that Congress provided the 30-day period following sentencing not in order to divorce the § 1251(b) decision from the sentencing process but as a failsafe in case the sentencing judge was unaware of his power under the statute or simply forgot to make the recommendation at the instant he imposed sentence.

Congress's desire to provide for judicial relief from deportation when deportation would constitute an unduly harsh penalty for the crimes committed was amply reflected in the debates. As originally presented to the House, the part of § 19 of the bill that became § 1251(b) provided that the alien convicted of a crime involving moral turpitude would not be deportable on that account "if the court sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence, make a recommendation to the Secretary of Labor that such alien shall not be deported in pursuance of this act." *See* 53 Cong. Rec. 5165 (1916). Various amendments to this and other language in § 19 of the bill were proposed. In the debate on the proposed amendments, the congressmen accepted as a given that the part of § 19 that became § 1251(a)(4), making the convicted alien deportable as a result of his convic-

tion, was intended to be part of the penalty for his crime. *See, e.g.,* 53 Cong.Rec. at 5170. The portion of § 19 that became § 1251(b), giving the court the power to prevent deportation on account of the conviction, was designed to make the total penalty for the crime less harsh and less severe when deportation would appear to be unjust. *See, e.g.,* 53 Cong.Rec. at 5169–74.

Further, the debate reveals that the congressmen sought to provide for this lessening of penalty by making the court's recommendation part of the sentencing process. This is inferrable, in part, from the facts that as originally proposed, § 1251(b) required the recommendation to be made at the time of sentencing and did not allow it to be made thereafter, and that efforts to amend the provision to permit the recommendation to be made "at any time" after sentencing met with staunch resistance. The rationale for this proposed amendment, as stated by its proponent Representative Sabath, was that "[f]requently during the trial of a case the judge may omit or forget to make a recommendation, and thereby the alien may be deprived of the provisions of this act and of the benefits which we are trying to give him." 53 Cong.Rec. at 5169. To similar effect, Representative Bennet, supporting another version of the total elimination of time constraint, pointed out that at the time of sentencing, "[a] judge sentencing a man for a felony may not know of the existence of this Federal statute." *Id.* at 5170. Notwithstanding the apparently unanimous sentiment for allowing the sentencing court to eliminate the deportation portion of the penalty when deportation would be unjust, the proposed amendment to permit this recommendation to be made "at any time" was overwhelmingly rejected.

The prevailing rationale of those who spoke in opposition to the open-ended expansion of the time when the recommendation could be made was that the matter should be handled by the judge most familiar with the facts of the case at the time when he is most familiar with them, *i.e.,*

when he imposed sentence. *See, e.g.*, statements of Representative Powers, *id.* at 5171 ("[A]t the time the judgment is rendered and at the time the sentence is passed, the judge is best qualified to make these recommendations."), and *id.* ("[A]t the time the sentence is imposed by the judge or at the time he passes sentence upon the prisoner all the facts in the case are clear in his mind. They will not be if years should elapse."); of Representative Howard, *id.* at 5170 ("[A]fter the facts have all gotten out of the mind of the judge, and several months have elapsed since the conviction of the criminal, a judge doing any volume of business can not possibly keep all of the facts and circumstances surrounding the trial of the man in his mind...."); of Representative McLaughlin, *id.* at 5171 ("[T]he proper time and the only time when the court should be permitted to make a recommendation, which has authority and which shall have weight, should be the time at which the case is tried by the court, and at the time the judge presiding over that court imposes judgment or renders his decision. I think that it would be unwise, unsafe to invest that court with this authority after the case has been disposed of."). Summing up these views, Representative Hayes stated as follows:

> When the alien is before the judge charged with a crime and the time for sentence comes, necessarily the question of whether he shall be deported or not must be presented to the court, and when all the facts are before him, and both sides have been heard by the court, that is the time when that important matter should be decided.

*Id.* These views led to the rejection of the proposal to amend the original form of the section to provide that the judicial recommendation against deportation could be made at any time.

The amendment of § 1251(b) to allow the sentencing court's recommendation to be made within 30 days after sentencing was adopted shortly thereafter. An initial proposal of Representative Siegel, which inserted the phrase "or within 30 days thereafter" but proposed no other changes, was, like the at-any-time amendments, proffered on the ground that "judges may make errors at the time of drawing the commitment papers or imposing sentences, and this amendment would give opportunity to the court or the judge imposing sentence to rectify his error...." 53 Cong.Rec. at 5172. The question was raised whether this proposed amendment would permit the judge to make his belated recommendation *ex parte.* Representative Siegel responded in the affirmative, and his proposed amendment was rejected without further debate, albeit by a substantially smaller margin than that by which the at-any-time amendment had been rejected. The amendment of § 1251(b) that was eventually adopted was that offered by Representative Powers. His proposed insertion of the 30-day provision was accompanied by the requirement that notice of the possible recommendation first be given to the representatives of the state. This proposed amendment was passed without discussion.

We note that in support of his proposal, Representative Powers stated, *inter alia,* that he thought "things might arise within 30 days after the sentence ha[d] been passed that would completely change the mind of the court and make him aware within that time that he ought to make his recommendation when he would not know it immediately after passing sentence." 53 Cong.Rec. at 5174. Although this statement might suggest that Representative Powers did not intend the recommendation to be part of the sentencing itself, we note that no other representative endorsed such a rationale and that it was contrary to the views expressed by most of those who spoke, including Representative Powers himself, in opposition to the proposal to make the recommendation grantable at any time. Thus, giving due regard to the debate as a whole, we infer that the Powers amendment prevailed where the Sabath amendment had failed because the Powers amendment tied the recommendation more closely to sentencing, and that the Powers amendment prevailed where the Siegel

amendment had failed because the Powers amendment provided that the belated recommendation could not be made *ex parte* but only after notice had been given to state authorities.

In sum, we view the House debates leading to the adoption of § 1251(b) in nearly its present form as indicating (1) that the 30-day provision was intended to allow for the possibility of oversight on the part of the sentencing judge, and (2) that only 30 days were allowed because Congress wished to make the recommendation a part of sentencing.

To the extent that there is any doubt as to Congress's intention, we resolve that doubt in favor of construing § 1251(b) as providing the alien with as much protection as possible. As the Supreme Court has stated in construing a part of § 1251(a)(4) favorably to the alien,

> [w]e resolve the doubts in favor of that construction because deportation is a drastic measure and at times the equivalent of banishment or exile, *Delgadillo v. Carmichael*, 332 U.S. 388 [68 S.Ct. 10, 92 L.Ed. 17]. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.

*Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948). *See also Barber v. Gonzales*, 347 U.S. 637, 642–43, 74 S.Ct. 822, 825, 98 L.Ed. 1009 (1954) ("Although not penal in character, deportation statutes ... should be strictly construed.").

Accordingly, we conclude that the recommendation envisioned by § 1251(b) is part of the sentencing process, a critical stage of the prosecution to which the Sixth Amendment safeguards are applicable.

### B. *Proceedings on Remand*

Having concluded that Janvier was entitled to the effective assistance of counsel in connection with the possibility of obtaining a § 1251(b) recommendation, we remand to the district court for further proceedings in connection with his motion for relief pursuant to 28 U.S.C. § 2255. We note that the government contends that the linchpin of the relief requested by Janvier, *i.e.*, the vacation of his 1983 sentence in order that a new sentence may be imposed and a timely recommendation for nondeportation made, is not available because the time limits of § 1251(b) are to be strictly enforced. We agree with the government's premise but not with the conclusion it would have us draw.

Section 1251(b) provides that the 30-day period during which the nondeportation recommendation may be made is triggered by the "first" sentencing of the alien. This provision has indeed been read restrictively. Thus, a § 1251(b) recommendation has been held ineffective when made in a belated order that purported to incorporate the recommendation *nunc pro tunc* into the original judgment, *see United States ex rel. Klonis v. Davis*, 13 F.2d 630 (2d Cir. 1926), or when the first judgment was vacated and judgment was reentered solely in order to cure the prior failure to give the required notice of the proposed recommendation to the authorities, *see United States ex rel. Piperkoff v. Esperdy*, 267 F.2d 72, 74 (2d Cir.1959).

The section is appropriately interpreted, however, as having its 30-day period triggered only by the imposition of a sentence that is valid. Thus, when a judgment has been vacated on grounds of ineffective assistance of counsel and a new judgment entered, the new judgment has been held to be the "first" judgment within the meaning of § 1251(b). *See Piperkoff v. Esperdy*, 267 F.2d at 75 (judgment entered in 1954, after vacation of a 1935 judgment on grounds of ineffective assistance of counsel, deemed "the time of first imposing judgment or passing sentence"); *Sawkow v. INS*, 314 F.2d 34, 37 (3d Cir.1963); *cf.*

*United States v. Young,* 750 F.2d 220, 221 n. 1 (2d Cir.1984) (original judgment vacated by district court on grounds of ineffective assistance of counsel consisting of counsel's failure to file timely notice of appeal; timely appeal taken from the new judgment entered on resentencing).

■ Accordingly, on remand, if the court finds, upon application of the appropriate standards, *see, e.g., United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that Janvier was deprived of the effective assistance of counsel, it has the authority to vacate the 1983 sentence and judgment and to conduct proceedings under § 1251(b) in order to determine whether or not to recommend that Janvier not be deported as a result of his convictions.

## CONCLUSION

The order of the district court denying Janvier's motion to vacate his sentence is vacated, and the cause is remanded for further proceedings not inconsistent with this opinion.

BARTELS, District Judge, concurring.

I concur in the result but, in all deference to the majority, must express my disagreement with the failure of the opinion to make it clear that failure of defense counsel to make a request for a recommendation against deportation does not *per se* constitute inadequate assistance of counsel.

While I hold some reservations concerning the decision that the procedure set out in 8 U.S.C. § 1251(b) is part of the sentencing process to which the Sixth Amendment applies (see opinion of former District Judge Miner, *United States v. Janvier,* 82 CR 114), I join the majority decision with the understanding that counsel's failure to request a recommendation does not *per se* constitute ineffective assistance. Some additional circumstances must be present. The test for ineffective assistance is whether, in light of all the circumstances of a case, counsel's acts or omissions were outside the range of professionally competent assistance. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052 (1984).

Obviously, any conclusion concerning counsel's performance herein requires an evaluation of the particular circumstances of this case, and in particular an assessment of "professional norms" in this area, as well as of the prejudice, if any, caused to Janvier by counsel's failure to request a recommendation. Accordingly, I agree that remand for such assessment is proper in this case.

Although we now hold that the unique procedure created by § 1251(b) is part of the sentencing process, it is well established that deportation proceedings are in all other respects civil proceedings, *see INS v. Lopez-Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3484 (1984). As such, they are, in practice, of only incidental concern to a defense attorney in a criminal prosecution. Furthermore, § 1251(b) itself focuses solely upon the sentencing judge's role in making the recommendation and upon the opportunity for the Government to be heard. No mention is made in the statute of defendant's counsel or the role such counsel should play in requesting non-deportation. Moreover, there is no assurance that the judge upon request of counsel would make such a recommendation. Under these circumstances, it is hardly surprising that in my experience as a district court judge, such requests for a recommendation under § 1251(b) very seldom have been made in the past. There may also be circumstances in which an attorney who was fully aware of 1251(b) would be justified in not making such a request. For example, counsel could conclude from the nature of the offense that the likelihood of securing a recommendation is so remote that a request would be unreasonable.

At all events, to hold that failure to request a recommendation in and of itself constitutes ineffective assistance, would in effect vitiate the thirty day limitation in a larger number of cases, and permit disruption of deportation proceedings beyond the thirty day limit. Before resorting to a *per*

*se* rule, respect must be accorded the thirty day limitation on the sentencing court's role.

In my opinion for the reasons above stated, failure to make a recommendation of non-deportation should not *per se* constitute ineffective assistance of counsel and the opinion should so state.