IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-2909

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARVIN CASTRO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(July 11, 1994)

Before HIGGINBOTHAM and WIENER, Circuit Judges, and KAUFMAN,[*] District Judge.

KAUFMAN, District Judge:

Petitioner appeals from the denial of his motion for a writ of coram nobis which he seeks, contending that when he pleaded guilty to a felony conviction, his counsel's failure to advise him of the availability of a Judicial Recommendation Against Deportation ("JRAD") constituted ineffective assistance of counsel. We reverse.

FACTS

Petitioner, Marvin Castro, is a citizen of Honduras. In 1984, while attending college in Texas, Castro and several of his co-defendants pleaded guilty to conspiracy to transport stolen trucks

_____

[*]    District Judge of the District of Maryland, sitting by designation.

from Texas to Louisiana in violation of 18 U.S.C. §§ 371, 2312, and 2313. The district court sentenced Castro to a four year sentence, with six months' imprisonment and three and one-half years suspended and five years supervised probation. At the time of sentencing, neither of Castro's two attorneys ever informed Castro of, or requested from the Court, a JRAD pursuant to 8 U.S.C. § 1251,[1] which would permit the district court to exercise its

---

[1] At the time of Castro's sentencing, 8 U.S.C. § 1251 provided that:

> (a) General classes
> Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who --
> . . . .
> (4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefore in a prison or corrective institution, for a year or more . . . ;
> . . . .
> (b) Nonapplicability of subsection (a)(4)
> The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply . . . if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.

The Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5050 (1990), repealed 8 U.S.C. § 1251(b) as of November 29, 1990, and therefore, the JRAD is no longer available.

Convictions for transporting and/or receiving stolen property with knowledge that such property is stolen constitute crimes of "moral turpitude." See 3 Gordon and Mailman, Immigration Law and Procedure § 71.05[1][d]; see also Palma v. INS, 318 F.2d 645, 649 (6th Cir. 1963), cert. denied, 375 U.S.

2

discretion at the time of sentencing or thirty days thereafter to order that Castro not be deported or excluded from the United States on account of his conviction.[2]

Castro served his sentence and never directly or collaterally attacked his guilty plea. Subsequently, Castro married a resident alien and became the father of a child born in the United States. Sometime after this, Castro was apparently deported.[3] Seeking to return to this country and rejoin his family, Castro sought a writ of coram nobis in the district court below, asserting that he would have not pleaded guilty if he had known that he would not be

---

958 (1963). Convictions under 18 U.S.C. §§ 2312, 2313, to which Castro pleaded guilty, require knowledge that the vehicles transported or received are stolen.

[2] The JRAD also prevents use of a conviction to exclude an alien from entering this country. See Santos v. Kolb, 880 F.2d 941, 942 n.1&2 (7th Cir. 1989), cert. denied, 493 U.S. 1095 (1990); United States v. Sanchez-Guzman, 744 F. Supp. 997, 999-1000 n.5 (E.D. Wash. 1990).

[3] In an affidavit, Castro claims he was deported after he served his sentence. However, Castro has never provided documentation of any Immigration and Naturalization Service ("INS") action taken against him. To obtain a writ of coram nobis, the petitioner must "demonstrate that he is suffering civil disabilities as a consequence of the criminal conviction[]." United States v. Marcello, 876 F.2d 1147, 1154 (5th Cir. 1989). The district court concluded that Castro's failure to provide such documentation meant that Castro had failed to satisfy the condition precedent for collateral relief. However, Castro has stated in an affidavit that he was deported, and there is no evidence proffered by the government to the contrary, nor does the government assert that Castro was not deported. Moreover, further lack of documentation from Castro would appear to be irrelevant in the light of the fact that it is undisputed that Castro is presently outside the United States, and is therefore excludable under 8 U.S.C. § 1182(a)(2)(A)(i) which provides that an alien is excludable if that alien has been "convicted of . . . (I) a crime involving moral turpitude." As noted in footnote 2 supra, a JRAD would prevent Castro's conviction from being a ground for exclusion.

3

allowed to live in the United States and that he would have requested a JRAD from the sentencing judge had he known about the availability of such possible relief. The district court denied Castro's said quest for relief, concluding that Castro's claim was procedurally barred under the cause and prejudice standard applicable in connection with 28 U.S.C. § 2255, and that in any event, Castro's claim fails on the merits. The district court reasoned that because a sentencing judge has absolute discretion to grant a JRAD, Castro could never show that he would receive a JRAD if one was requested and thus, could not demonstrate prejudice resulting from his counsel's failure to utilize the JRAD route. Castro appeals from that denial, contending that he has been denied effective assistance of counsel because his counsel never informed Castro of the availability of JRAD relief.[4]

DISCUSSION

The writ of coram nobis is an "extraordinary remedy," United States v. Morgan, 346 U.S. 502, 511 (1954), available to a petitioner no longer in custody who seeks to vacate his conviction in circumstances where "the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal convictions and that the challenged error is of sufficient magnitude to justify the extraordinary relief." United States v. Marcello, 876 F.2d 1147, 1154 (5th Cir. 1989) (citations omitted).

---

[4]    In this Court, Castro has dropped the argument made by him before the district court that failure to advise him of the collateral consequences of his guilty plea, ie., deportation, constituted ineffective assistance of counsel.

4

The remedy of coram nobis "should issue to correct only errors which result in a complete miscarriage of justice."  Id. (citing Morgan, at 512).

In United States v. Drobny, 955 F.2d 990, 996 (5th Cir. 1992), we noted that the standard for coram nobis relief was more "demanding" than the cause and prejudice standard for habeas corpus relief under 28 U.S.C. § 2255.  Without setting a more specific standard for coram nobis relief, we stated that, "[u]nder Morgan, if Drobny could prevail on his ineffective assistance of counsel claim, he would be entitled to relief even under the rigorous standards of coram nobis."  Id.  Thus, if Castro succeeds on his claim for ineffective assistance of counsel, then under the law of this circuit, he is entitled to coram nobis relief.[5]

To demonstrate ineffective assistance of counsel, a criminal

---

[5]     The government urges us to apply the cause and prejudice standard applied in § 2255 cases pursuant to United States v. Frady, 456 U.S. 152, 167-68 (1982) ("Under this standard, to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) `cause' excusing his double procedural default, and (2) `actual prejudice' resulting from the errors of which he complains.").  Castro urges us to adopt the Ninth Circuit's standard for coram nobis set forth in United States v. Walgren, 885 F.2d 1417 (9th Cir. 1989), which provides for coram nobis relief if the petitioner can demonstrate:
            "`(1) a more usual remedy is not available;
            (2) valid reasons exist for not attacking the
            conviction earlier; (3) adverse consequences
            exist from the conviction sufficient to
            satisfy the case or controversy requirement
            of Article III; and (4) the error is of the
            most fundamental character.'"
Id. at 1420 (citing Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987)).  However, in the light of our ruling in Drobny, we simply proceed under the standard enunciated in that case.

5

defendant must demonstrate both that his counsel's representation was deficient and that he was prejudiced by counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 687 (1984). "The proper standard for attorney performance is an objective standard of reasonableness under prevailing professional norms." Smith v. Puckett, 907 F.2d 581, 584 (5th Cir. 1990), cert. denied, 498 U.S. 1033 (1991).  "To show prejudice, [the defendant] `must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id., at 584 (quoting Strickland, 466 U.S. at 694).

Relying on United States v. Gavilan, 761 F.2d 226 (5th Cir. 1985), the government argues that Castro's lawyers were not ineffective.  In Gavilan, we held that counsel's failure to advise an alien charged with possession of marijuana that his guilty plea could result in deportation did not make the guilty plea defective. Id. at 228-29.  Subsequently, in United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993), we held that failure to inform a client of the possibility of deportation did not establish ineffective assistance of counsel in violation of the Sixth Amendment.  As we noted in Banda, our holding in that case is supported by other Circuits which have addressed the issue.  See Banda, 1 F.3d at 356 (citing cases which have so held).

However, Castro is not contending in this appeal that he would have changed his guilty plea if he had known that deportation was a collateral consequence of that plea; nor is he arguing in this Court that his counsel's failure to advise him of that consequence

6

violated the Sixth Amendment's guarantee of effective assistance of counsel.[6]   Rather, Castro contends in this Court that his counsel was ineffective for failing to advise him of the availability of a JRAD or to request the same from the sentencing court.   A deprivation of an opportunity to have a sentencing court exercise its discretion in a defendant's favor can constitute ineffective assistance of counsel.   See United States v. Golden, 854 F.2d 31, 32 (3rd Cir. 1988) (ineffective assistance of counsel may be established where defense counsel failed timely to file a motion for reduction of sentence).

That principle formed the basis of the Second Circuit's decision in Janvier v. United States, 793 F.2d 449 (2nd Cir. 1986), in which the Second Circuit faced the precise issue raised in the within appeal.   In Janvier, a jury found Janvier, a Haitian citizen, guilty of possession of counterfeit United States currency.   Immediately upon his release from prison, Janvier was released into the custody of the INS for deportation.   Janvier's counsel did not know of JRAD relief at the time of sentencing and thus never advised his client before or during sentencing of the possibility of such relief, or requested it from the sentencing court.   In a § 2255 petition, Janvier argued that he had been denied effective assistance of counsel.   The district court, however, did not reach that issue, determining instead that any alleged ineffective assistance occurred at a time other than a critical stage of a criminal proceeding and that therefore, the

---

[6]     See footnote 4 supra.

7

Sixth Amendment protection did not apply.

The Second Circuit reversed, holding that a request for a JRAD, "is part of the sentencing process, a critical stage of the prosecution to which the Sixth Amendment safeguards are applicable," rather than part of the civil deportation proceedings to which the protection against ineffective assistance of counsel does not apply. Id. at 455. Judge Kearse, writing for a unanimous Court, was persuaded by the following factors: (1) only the sentencing court had the power to grant JRAD relief; (2) the sentencing judge's determination was binding on the Attorney General, and was thus part of a sentencing judge's imposition of penalty; and (3) the thirty day time period within which a determination might be made is "strictly linked to the time of the first imposition of a valid sentence." Id. at 452. Judge Kearse examined the legislative history in great detail, concluding that Congress adopted the thirty day JRAD provision in order to make the JRAD part of sentencing.

The First Circuit, in a 2-1 decision, rejected the conclusion of the Second Circuit in Janvier, holding instead that the JRAD is "substantively a part of civil deportation measures." United States v. Bodre, 948 F.2d 28, 35 (1st Cir. 1991), cert. denied, 112 S. Ct. 1487 (1992).[7] In so doing, Judge Hill of the Eleventh Circuit, sitting by designation, stated that although the JRAD is

_____

[7] In Bodre, plaintiff's contentions were stated in the context of whether Congress's repeal of JRAD relief could be given retrospective application without violating ex post facto principles. Id. at 30.

8

procedurally part of the sentencing process, the "<u>substantive</u> <u>effect</u> of a JRAD was on the alien's deportability status and not upon the sentence imposed," <u>id.</u> at 34, and that "to the extent the Second Circuit's opinion in <u>Janvier</u> held that the JRAD was substantively within the scope of criminal sentencing, we respectfully disagree." <u>Id.</u> at 35. In dissent, Judge Bownes, after acknowledging that "deportation proceedings are civil in nature," stated that "[t]he question should not focus on the nature of a <u>deportation</u> proceeding. . . . [but] on the nature of a <u>JRAD</u> proceeding." <u>Id.</u> at 37. The Ninth Circuit, in <u>United States v.</u> <u>Shaibu</u>, 957 F.2d 662 (9th Cir. 1992), held that a JRAD ruling is a final appealable decision. <u>Id.</u> at 664. In so doing, Judge T.G. Nelson, writing for a unanimous panel, followed the reasoning of <u>Janvier</u>, noting that "[s]ince the right to request a JRAD is triggered by the conviction, and must be presented to and acted upon by the sentencing court within a short time of the imposition of sentence, and is binding upon the Attorney General, the JRAD proceeding is a part of the sentencing process." <u>Id.</u> at 664. Like the Ninth Circuit, we adopt the extensive and persuasive analysis of Judge Kearse's opinion in <u>Janvier</u> and hold that Sixth Amendment protections apply to requests for a JRAD.[8] The JRAD is far too

---

[8]     In <u>Santos v. Kolb</u>, 880 F.2d 941 (7th Cir. 1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1059 (1990), counsel failed to advise his alien client about the deportation consequences of his guilty plea, failed to seek a JRAD, and later stated that "[a]t the sentencing process, it did not occur to me that deportation is an almost inevitable consequence for a noncitizen who is convicted, or who makes an admission of a felony." <u>Id.</u> at 942. However, the Court discussed only the cases holding that ineffective assistance of counsel is not established by counsel's failure to warn of the

inextricably linked to the traditional sentencing process to require that an attorney be held to constitutional standards for some other parts of the sentencing proceeding and not to the JRAD part. In any event, we note further that in this Circuit it has not been foreclosed that an alien may have a constitutional claim for ineffective assistance of counsel which arises in deportation proceedings. Miranda-Lores v. INS, 17 F.3d 84, 85 n.1 (5th Cir. 1994) ("assum[ing] without deciding," that an alien may have a due process claim for ineffective assistance of counsel which occurs at deportation proceedings) (citing Ogbemudia v. INS, 988 F.2d 595, 598 (5th Cir. 1993)).

After determining that a request for a JRAD is part of the criminal sentencing process, the court in Janvier remanded the case to the district court to determine whether Janvier was deprived of effective assistance of counsel.[9] On remand, the district court concluded that while failure of counsel to inform a client of JRAD relief does not constitute per se ineffective assistance of counsel, Janvier had met the Strickland standard. Janvier v.

---

collateral consequences of a guilty plea. The Court did not cite to Janvier, nor did it zero in on, and petitioner apparently did not press, the argument that petitioner was prejudiced by his counsel's failure to ask the sentencing court to exercise its discretion on petitioner's behalf through a JRAD.

[9] We note that the Second Circuit also adheres to the well-settled rule that failure of counsel to advise of the deportation consequences of a guilty plea does not constitute ineffective assistance of counsel. See United States v. Santelises, 509 F.2d 703, 704 (2d Cir. 1975); see also Banda, 1 F.3d at 356 (listing the Second Circuit as having adopted that view).

10

_United States_, 659 F. Supp. 827 (N.D.N.Y. 1987).[10] The district court first determined that counsel's failure to advise Janvier of JRAD relief was inadequate because it "was not a strategic choice," _id._ at 829, and counsel did not know of or investigate the deportation consequences of petitioner's convictions. "Such a failure to investigate the applicable law of a case cannot be considered adequate under prevailing norms of professional competency." _Id._ at 829. The court then concluded that Janvier had shown direct prejudice because "no hearing was requested and no recommendation sought." _Id._

The record in this case shows that Castro may well be able to make a similar showing of inadequacy of counsel and prejudice if his motion for writ of _coram nobis_ is considered under the _Janvier_ standard. As in _Janvier_, it appears that Castro's two attorneys were not aware, prior to completion of the sentencing process, of the deportation consequences of his plea or of the availability of a JRAD. Further, without the request for a JRAD, the sentencing court was deprived of an opportunity to exercise its discretion in Castro's favor.

Further, Castro can show, pursuant to the _Strickland_ standard, that there is a reasonable probability that, had it been made, his JRAD request might have succeeded. Under _Strickland_, the defendant

---

[10] The district court noted that a per se rule would not be advisable because "circumstances may justify an attorney, who is aware of the deportation consequences of conviction and sentencing, in not requesting such a hearing and recommendation." _Id._ at 828 n.1 (citing _Janvier_, 793 F.2d at 455 (Bartels, J. concurring)). We agree and remand with that approach in mind.

11

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In Burley v. Cabana, 818 F.2d 414 (5th Cir. 1987), this Court held that "counsel's failure to inform the state trial court of sentencing alternatives constituted ineffective assistance of counsel." Id. at 415. In Burley, the sentencing judge had been unaware of his sentencing options and this Court concluded that "there is a reasonable probability that the trial court would not have imposed a life sentence had it known" of those options. Id. at 418.

Similarly, in this case, the sentencing judge was apparently unaware of the availability of JRAD relief. Further, there are several factors in this case which would support the grant of a JRAD. As noted earlier, Castro has an American wife and an American child. Moreover, at Castro's sentencing, the government stated that, "We would note for the court, as stated in the pre-sentence investigation, that Mr. Castro . . . [was] in the second tier of the conspiracy and that [his] involvement[] [was] minimal." Subsequently, the sentencing judge sentenced Castro "to the custody of the Attorney General of the United States or his authorized representative for a period of four years. However, I am going to split that sentence, that would be six months to serve, the remainder to be suspended. And you will be placed on probation for a period of five years." Although the government points out in its brief that the sentencing judge did not apply the Youth Corrections Act to Castro, a review of the transcript reveals that the

12

sentencing judge declined to use that Act because Castro "would not benefit from sentencing under that Act." (Emphasis added). There is no suggestion whatsoever in the transcript that the sentencing judge did not apply that Act because the judge felt Castro was undeserving of a more lenient punishment. Rather, the opposite appears true. Given the government's concession that Castro was a minor player in the conspiracy, the sentencing judge's apparent leniency in sentencing Castro, and Castro's extremely strong ties to the United States, Castro has adequately demonstrated a level of actual prejudice to satisfy the standards enunciated in Strickland and Burley.

Our recent case of Miranda-Lores v. INS, 17 F.3d 84 (5th Cir. 1994), is not to the contrary. In that case, a Cuban national with permanent resident status in the United States appealed an order of deportation against him based on his conviction for cocaine distribution. At the deportation proceedings, aided by counsel, petitioner conceded his deportability, and further, announced his intention to seek § 212(c) relief, 8 U.S.C. § 1182(c), a form of relief from deportation available in the discretion of the Attorney General. By the time of the final hearing before the Immigration Judge, however, petitioner had not filed an application for § 212(c) relief, and instead, had abandoned any claim along those lines. Petitioner then appealed the Immigration Judge's decision, claiming that his counsel was ineffective for failing to seek §212(c) relief. We affirmed the Board's rejection of that appeal, because petitioner could not show he was prejudiced by his

13

counsel's actions.  Id. at 85.

Unlike the within case, there was no allegation in Miranda-Lores that counsel did not inform his client of the availability of discretionary relief; rather, counsel as well as the Immigration Judge in Miranda-Lores raised the option of discretionary relief which petitioner then rejected.  Because Miranda-Lores knew about § 212(c) relief, the only means by which he could demonstrate prejudice would be to show that if the § 212(c) application had been filed, he would have been entitled to relief.  However, Miranda-Lores never alleged any facts that would have supported the discretionary grant of relief, and thus, he could not meet the prejudice burden.  In contrast, in the within case, as far as the record herein reveals, no one connected with the case -- the court, or petitioner, or petitioners' counsel -- ever considered the option of discretionary JRAD relief.  Thus, Castro need not show that he would have received said relief, but only that had such relief been requested, the court would have had the opportunity to exercise its discretion either to grant or to deny it and that there is a reasonably probability that the judge would have granted such relief.  As the district court noted, Castro cannot probably in this appeal prove conclusively that he would have been granted JRAD relief by the district court if he had requested the same, since such grant lies within the discretion of the district court. To require such a showing would eviscerate part of the Sixth Amendment's guarantee of effective assistance of counsel. Attorneys would simply be unaccountable for their failure to seek

14

<u>any</u> form of discretionary relief, regardless of the extreme consequences which could accompany such failure. It is unquestioned that Castro, if he desired, was entitled to have the sentencing court consider a JRAD. It is also apparent that there is a reasonable probability that such relief would have been granted if a request had been made. Accordingly, prejudice in this case arises from the failure of counsel to seek a JRAD, if indeed there was such a failure, and from the reasonable probability that Castro would have received the JRAD. Accordingly, we remand to the district court to determine if Castro's counsel rendered ineffective assistance under <u>Strickland</u> standards, as they should be applied in this case in accordance with this opinion, and if so, whether JRAD relief should be granted or denied.

REVERSED AND REMANDED.